**Kelley RICHEY, Petitioner,**

v.

**BROOKSHIRE GROCERY CO. d/b/a Super 1 Food Store, Respondent.**

No. 95–0692.

Supreme Court of Texas.

Argued Oct. 22, 1996.

Decided July 9, 1997.

Rehearing Overruled Oct. 30, 1997.

Gregory P. Grajczyk, William K. Gleason, Longview, for Petitioner.

Molly H. Hatchell, Mike A. Hatchell, Tyler, for Respondent.

SPECTOR, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, HECHT, ENOCH and OWEN, Justices, join.

The issue in this malicious prosecution case is whether Brookshire Grocery Store lacked probable cause to initiate criminal proceedings against Kelley Richey. The jury found, along with the other elements of malicious prosecution, that Brookshire lacked probable cause to file a criminal prosecution against Richey and awarded him damages. The court of appeals reversed, holding that there was no evidence to support the jury's finding on the probable cause issue. 899 S.W.2d 331. We agree with the court of appeals and therefore affirm.

## I.

On December 11, 1989, at approximately 2:30 a.m., Richey entered a Brookshire Super 1 Food Store. Brookshire night manager Russell Farris saw Kelley Richey enter the store and place a pack of cigarettes in his shopping cart. Farris then observed Richey "twiddle" the cigarettes in his hand and later put them in his coat pocket. As night manager, Farris was required to be alert to potential shoplifting, cigarettes topping the list of items commonly taken. As Richey

checked out, he wrote a check for $51.75 for some groceries and began to bag them. He did not pay for the cigarettes in his pocket. Before walking out of the store, Richey pulled a food carton from one of the bags and read the label. Then Richey proceeded toward the door, stopping near a bin in which customers could place items to be donated to charity. He got a sack, went back to the food aisles and filled the sack with baby food, and paid $8.89 in cash. He still did not pay for the cigarettes. Richey then placed the baby food in the charity bin and left the store.

In the parking lot, Farris and another employee asked Richey if he had forgotten to pay for anything. Richey said that he had not. When Farris mentioned the cigarettes in Richey's pocket, Richey stated that he had inadvertently put them there and offered to pay for them. Following company policy, Farris refused to accept payment for the cigarettes. When the police arrived, Richey asked the police officer to mention in his report that Richey had contributed to the charity bin. Richey was interrogated, given a citation, and released. On his way out of the store, Richey removed the baby food from the charity bin and took it to his car. Farris later signed a sworn complaint charging Richey with theft of the cigarettes.

At the criminal trial, the jury found Richey not guilty after deliberating only a few minutes. Richey then filed this suit for false imprisonment and malicious prosecution. The jury in the civil trial returned a verdict against Richey on his false imprisonment claim but found in his favor on the malicious prosecution claim, awarding him $18,400 in actual damages and $18,400 in exemplary damages. The court of appeals, with one justice dissenting, reversed and rendered judgment in favor of Brookshire, holding that there was no evidence to support the jury's finding that Brookshire lacked probable cause to prosecute Richey. 899 S.W.2d at 335.

## II.

■ A plaintiff in a malicious criminal prosecution claim must establish

(1) the commencement of a criminal prosecution against the plaintiff;

(2) causation (initiation or procurement) of the action by the defendant;

(3) termination of the prosecution in the plaintiff's favor;

(4) the plaintiff's innocence;

(5) the absence of probable cause for the proceedings;

(6) malice in filing the charge; and

(7) damage to the plaintiff.

*See Coniglio v. Snyder*, 756 S.W.2d 743, 744 (Tex.App.—Corpus Christi 1988, writ denied); *see also Ellis County State Bank v. Keever*, 888 S.W.2d 790, 793–94 (Tex.1994); *Browning–Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 292–93 (Tex.1994). At issue in this appeal is whether Brookshire had probable cause to initiate criminal proceedings against Richey.

■ We have long defined probable cause as "the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor [complainant], that the person charged was guilty of the crime for which he was prosecuted." *Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex.1983), *cert. denied*, 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984); *see Ramsey v. Arrott*, 64 Tex. 320, 323 (Tex.1885) (quoting *Wheeler v. Nesbitt*, 65 U.S. 544, 551–52, 24 How. 544, 16 L.Ed. 765 (1860)). The probable-cause determination asks whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted. *Akin*, 661 S.W.2d at 920–21; *Coniglio*, 756 S.W.2d at 744.

■ Malicious prosecution actions involve a delicate balance between society's interest in the efficient enforcement of the criminal law and the individual's interest in freedom from unjustifiable and oppressive criminal prosecution. *Lieck*, 881 S.W.2d at 290–91. Accordingly, there is an initial presumption in malicious prosecution actions that the defendant acted reasonably and in good faith and had probable cause to initiate the proceedings. *Keever*, 888 S.W.2d at 794; *Akin*,

661 S.W.2d at 920. That presumption disappears once a plaintiff produces evidence that the motives, grounds, beliefs, and other evidence upon which the defendant acted did not constitute probable cause. *Id.* The burden then shifts to the defendant to offer proof of probable cause. *Id.*

Whether probable cause is a question of law or a mixed question of law and fact depends on whether the parties dispute the underlying facts. When the facts underlying the defendant's decision to prosecute are disputed, the trier of fact must weigh evidence and resolve conflicts to determine if probable cause exists, as a mixed question of law and fact. *Akin,* 661 S.W.2d at 920. It has long been true, however, that "[w]hen the facts are not contested, and there is no conflict in the evidence directed to that issue, the question of probable cause is a question of law which is to be decided by the court." *Ramsey v. Arrott,* 64 Tex. 320, 323 (1885); *see also Landa v. Obert,* 45 Tex. 539, 543 (1876) ("[w]hat facts and circumstances amount to probable cause is a pure question of law"). Probable cause in this case, in which the facts and events leading up to Richey's arrest are undisputed, is therefore a question of law for the court and not the trier of fact. *See also, e.g., Daniels v. Finney,* 262 S.W.2d 431, 433 (Tex.Civ.App.—Galveston 1953, writ ref'd n.r.e.); *Montgomery Ward & Co. v. Kirkland,* 225 S.W.2d 906, 908 (Tex. Civ.App.—San Antonio 1949, writ ref'd n.r.e.); RESTATEMENT (SECOND) OF TORTS § 673(1)(c).

### III.

Because lack of probable cause in this case is a question of law, the issue for the Court is whether the undisputed facts underlying the decision to prosecute support a reasonable belief that Richey was guilty of theft. Because Richey concealed merchandise, retained the merchandise in his possession, and passed through the check-out line without paying for the merchandise, the only probable-cause issue is the reasonableness of Brookshire's belief as to Richey's state of mind at the time of the appropriation. *See* TEX. PENAL CODE § 31.03.

In a malicious prosecution case based on a criminal complaint, the complainant's failure to make a further investigation into the suspect's state of mind does not constitute lack of probable cause if all objective elements of a crime reasonably appear to have been completed. *See Thomas v. Cisneros,* 596 S.W.2d 313, 317–18 (Tex.Civ.App.— Austin 1980, writ ref'd n.r.e.); *Carswell v. Southwestern Bell Tel. Co.,* 449 S.W.2d 805, 817 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ). In this case, in which the store manager observed Richey leave the store without paying for an item in his concealed possession, the store employees had no duty to inquire into Richey's state of mind before prosecuting. *See Delchamps, Inc. v. Morgan,* 601 So.2d 442, 445 (Ala.1992) ("Because Morgan undisputedly had a visible pack of cigarettes in her pocket, [the store employee] could have entertained 'an honest and strong suspicion' that she had concealed store property. Therefore, the malicious prosecution count should not have been submitted to the jury."); *Melia v. Dillon Cos., Inc.,* 18 Kan. App.2d 5, 846 P.2d 257, 261 (1993) ("Here, it is uncontested that Melia concealed and failed to pay for merchandise belonging to the store. Consequently, the existence of probable cause in this case is not a jury question."). As one court of appeals has noted, "A private citizen has no duty to inquire of the suspect whether he has some alibi or explanation before filing charges." *Marathon Oil Co. v. Salazar,* 682 S.W.2d 624, 627 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *see also* 52 AM.JUR.2D *Malicious Prosecution* § 54 (1970).

Even if Richey's intent to shoplift could not be presumed under these circumstances, the undisputed facts of this case dictate that it was not unreasonable for Brookshire's employees to believe that Richey intended to steal the cigarettes. Richey admitted that he placed the cigarettes in his pocket and did not pay for them. At trial, he testified that his behavior could lead someone to believe that he was shoplifting:

Q I know you had no intent but yet from your actions it looks like somebody was actually shoplifting by picking up those cigarettes and concealing them, isn't that right?

A That's right.

\* \* \* \* \* \*

Q And the reason why it was a mistake is because somebody could look at that and think you were in fact shoplifting based on what they observed about your conduct.

A That's right.

Richey thus admitted that it was reasonable to believe that he had committed theft. Neither Richey's charity contribution nor his offer to pay after passing through the check-out line with the cigarettes negates Farris's reasonable belief that Richey intended to deprive Brookshire of the cigarettes. It was therefore reasonable for Brookshire's employees to believe that Richey intended to steal the cigarettes.[1]

 Richey argues that Brookshire's failure to fully and fairly disclose all relevant facts to the police constitutes a lack of probable cause. It has been stated that the malicious-prosecution defendant lacks probable cause if he or she makes a material misrepresentation or does not disclose all known material facts in good faith to law enforcement officials. *See, e.g., Ellis County State Bank v. Keever*, 888 S.W.2d at 794–95; *Compton v. Calabria*, 811 S.W.2d 945, 950 (Tex.App.—Dallas 1991, no writ); *Marathon Oil Co.*, 682 S.W.2d at 627; *Eans v. Grocer Supply Co., Inc.*, 580 S.W.2d 17, 21 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). In *Browning-Ferris Industries, Inc. v. Lieck*, however, we held that knowingly providing false information to a public official satisfies the causation element, rather than the lack-of-probable-cause element, of a malicious prosecution claim. 881 S.W.2d at 293–94.

 We similarly conclude today that failing to fully and fairly disclose all material information and knowingly providing false information to the prosecutor are relevant to the malice and causation elements of a malicious prosecution claim but have no bearing on probable cause. The notion that probable cause can be negated by the failure to make a full and fair disclosure seems to have been derived mistakenly from the court of civil appeals' opinion in *Sebastian v. Cheney*, 24 S.W. 970 (Tex.Civ.App.), *rev'd*, 86 Tex. 497, 25 S.W. 691 (1894). In that case, the court of appeals held that the fact that a complainant consults with counsel before making a full and fair disclosure to public officials does not always insulate the complainant from a later malicious prosecution suit. 24 S.W. at 972. Later courts have cited *Sebastian* wrongly, we think, for the proposition that a failure to make a full and fair disclosure in itself constitutes a lack of probable cause. *See, e.g., Eans*, 580 S.W.2d at 21; *Ada Oil Co. v. Dillaberry*, 440 S.W.2d 902, 910 (Tex.Civ. App.—Houston [14th Dist.] 1969, writ dism'd).

The probable cause inquiry asks only whether the complainant reasonably believed that the elements of a crime had been committed based on the information available to the complainant before criminal proceedings began. When a complainant reasonably believes a crime has occurred, the reasonableness of that belief is not negated by the failure to fully disclose all relevant facts to the officer. Thus, the extent of the disclosure to the prosecutor is not probative of lack of probable cause, but rather indicates whether the complainant may have acted with malice or may have, by knowingly providing false information, caused the prosecution. *See Sebastian*, 25 S.W. at 693 (failure to make full disclosure to officer is probative of malice); *Lieck*, 881 S.W.2d at 293–94 (knowingly making false disclosure is probative of causation). Whether Brookshire's employee failed to fully disclose all relevant information to the officer is therefore immaterial to the probable-cause inquiry currently before us. *See Biering v. First Nat'l Bank of Galveston*, 69 Tex. 599, 7 S.W. 90, 92 (1888) ("want of probable cause can never be inferred from proof of malice"). As a matter

---

1. Contrary to the dissent's rhetoric, we do not conclude that Kelly Richey is a "thief." As the court of appeals noted, "It appears from the record that Richey was acquitted by the municipal court jury because he did not *intend* to shoplift, not because there was a lack of probable cause." 899 S.W.2d at 337. Our holding that Brookshire had probable cause *to believe* that Richey had committed theft is unrelated to Richey's actual innocence or guilt. *See McManus v. Wallis*, 52 Tex. 534 (1880); *Haldeman v. Chambers*, 19 Tex. 1 (1857).

of law, then, we hold that Brookshire had probable cause to initiate criminal proceedings against Richey.

## IV.

Actions for malicious prosecution create a tension between the societal interest in punishing crimes and the individual interest in protection from unjustifiable criminal prosecution. *Lieck*, 881 S.W.2d at 290–91. We are not called upon today to pass on the wisdom of Brookshire's policy of prosecuting customers who reasonably appear to have taken merchandise from the store without paying—regardless of the value of the merchandise taken. In this case, Brookshire should not and cannot be punished for prosecuting Richey when Brookshire's employees saw Richey conceal merchandise, retain the merchandise in his possession, and pass through the check-out line without paying for the merchandise. Accordingly, we affirm the take-nothing judgment of the court of appeals.

CORNYN, Justice, joined by GONZALEZ, BAKER and ABBOTT, Justices, dissenting.

After he was acquitted of shoplifting by one jury, a second jury concluded from the evidence in this case that no reasonable person would have believed that Kelley Richey, first, paid $51 for groceries, and then paid almost $9 more for groceries that he donated to charity, and then intentionally stole a $1.49 pack of cigarettes when he had the money in his pocket to pay for it. Both juries concluded from the evidence that Richey took the cigarettes by mistake, without any intention to steal them. Nevertheless, five members of this Court hold that the *only* conclusion that may reasonably be drawn from the evidence is that Kelley Richey is a thief. Like the two juries who heard all the evidence in this case, three other members of this Court, one justice on the court of appeals panel, and the trial judge, I disagree.

The practical effect of the Court's holding is breathtaking: *anytime* a person leaves a store without paying for merchandise by mistake, that is, with no intention to steal it, the store owner is always legally justified in pursuing criminal charges against the customer.

No other circumstances matter. Even though the innocent customer may eventually be acquitted, as was Kelley Richey, under today's decision, the customer has no recourse for the public humiliation, the damage to one's reputation, and the potentially devastating financial consequences of having to defend oneself in the criminal justice system against false charges.

I object to the Court's actions on two grounds. My first objection is to the Court's transformation of probable cause in this case from a fact question to a legal question. Simply because the "facts and events leading up to Richey's arrest are undisputed," *supra*, 952 S.W.2d at 518, does not mean probable cause is a question of law for the court. While the underlying facts of what happened that night are undisputed, those facts give rise to conflicting inferences. This Court has long held that resolution of conflicting inferences, including those arising from undisputed facts, lies with the factfinder: "If reasonable minds can draw different inferences or conclusions from undisputed facts, a fact issue is presented." *Commercial Standard Ins. Co. v. Davis*, 134 Tex. 487, 137 S.W.2d 1, 2 (1940); *see also Ramo, Inc. v. English*, 500 S.W.2d 461, 467 (Tex.1973); *Mills v. Bartlett*, 377 S.W.2d 636, 638 (Tex.1964); *Cavanaugh v. Davis*, 149 Tex. 573, 235 S.W.2d 972, 977 (1951); *Le Master v. Fort Worth Transit Co.*, 138 Tex. 512, 160 S.W.2d 224, 226 (1942). That the court of appeals or this Court would have drawn a different conclusion from the facts does not authorize substitution of judicial factfinding for the jury's verdict. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634–35 (Tex.1986). Moreover, even if probable cause in this case is a question of law, the Court is still bound to consider all the facts and circumstances, including evidence relevant to Brookshire's motives, grounds, and beliefs, before applying the law. *See Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex.1983). But the Court's analysis unjustifiably excludes far more evidence than it includes.

Second, contrary to the Court's conclusion, under the proper no-evidence standard of review, Richey produced legally sufficient evidence to support the verdict. Probable cause is the existence of such facts and cir-

cumstances as would cause the belief, in a reasonable mind, acting on the facts within the knowledge of the complainant, that the person charged was guilty of the crime for which he or she was prosecuted. *Akin,* 661 S.W.2d at 921. Material to this objective inquiry is evidence of the beliefs and motives of the complainant at the time criminal proceedings began; the ultimate guilt or innocence of the accused is immaterial. *Id.* at 920. Thus, to prevail, Richey needed to offer evidence and secure a jury finding that facts and circumstances did not exist at the time criminal proceedings were instituted to support a reasonable belief that he had committed a crime. This, he did.

When reviewing a no-evidence point of error, we consider only the evidence and reasonable inferences that support the verdict and disregard all evidence and inferences to the contrary. *Ellis County State Bank v. Keever,* 888 S.W.2d 790, 794 (Tex.1994). If any evidence supports the finding, the finding must be upheld. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

The basic facts, detailed in the Court's opinion, support the jury's inference and finding that a reasonable person in Brookshire's position would not have believed that Richey had *intended to* steal the cigarettes. While the jury was not required to believe Richey's story and could have rejected it, it was certainly within the jury's power to accept it. Richey paid $51.75 for groceries for his family, re-entered the store to purchase items for charity, paid an additional $8.89 in cash for those items, had cash on hand to pay $1.49 for the cigarettes, and offered to pay for them when he was reminded of his oversight. The jury, in essence, found that a reasonable person would not have believed that a customer who had just paid $51.00 for his own groceries and $9.00 for groceries for charity would intentionally steal cigarettes worth $1.49 when he had in his pocket the money to pay for them.

Jack Millican, Brookshire's Director of Safety and Loss Control, testified that company policy required managers to investigate each suspected shoplifting incident. But, he said, this policy was limited to determining whether the customer left the store without paying for an item; company policy did not differentiate between criminal and noncriminal takings. Similarly, Kevin Santone, the District Manager, testified that rather than determining whether a taking may have been inadvertent, Brookshire's policy was simply to conclude that the taking was intentional from the taking itself. Once a customer is suspected of being a thief, he said, the customer will always be regarded as such, regardless of the circumstances of the case. Finally, in contrast to Brookshire's policy when dealing with customers, the jury heard that store employees who left without paying for goods would be forgiven for "honest errors." This evidence lends further support to the jury's apparent conclusion that while a reasonable person would have concluded that Richey inadvertently took the pack of cigarettes, Brookshire nevertheless pressed charges against Richey as a matter of course.

The jury could also have disregarded Brookshire's alleged grounds for probable cause because of inconsistencies in the testimony of Russell Farris, the night manager on duty during the incident. He testified that Brookshire stressed accuracy in the internal reports filed by managers, and he told the jury that he had filled out the Richey report while waiting for the police to arrive, so that the details would be "fresh" on his mind. But, neither the internal report nor the police report mention that Richey paid $5 1.00 for his groceries, re-entered the store and paid for more groceries for charity, or had cash on hand to pay for the cigarettes. And, neither report included a litany of other factors that Farris told the jury were important to his decision to press charges: Richey's "shifty looks," "stalling tactics," "nervous" demeanor, and the smell of alcohol on his breath. When, as here, conflicting evidence exists on an issue, the jury's verdict is generally conclusive on such matters as the weight given to the evidence and the credibility of witnesses. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796–97 (1951).

Moreover, Farris's inaccurate report to the police was sufficient by itself to support a finding that probable cause did not exist to prosecute Richey. "[Lack of probable cause] may be demonstrated by proof that the de-

fendant made material misrepresentations to the prosecuting officer." *Ellis County State Bank v. Keever*, 888 S.W.2d at 794–95. Texas law requires a complainant to make a "full and fair disclosure of the facts and circumstances known to him at the time.... [U]nless he acts in good faith in disclosing to the prosecuting attorney all material facts known to him, probable cause does not exist." *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 627 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). It is only after "a person fairly discloses facts in his possession to the prosecuting officer [that] he has no duty to make further investigation...." *Id.* at 628; *see also Coniglio v. Snyder*, 756 S.W.2d 743, 744 (Tex.App.—Corpus Christi 1988, writ denied) ("Unless a person fairly discloses information to a prosecuting attorney, in good faith, probable cause does not exist."); *Diamond Shamrock Corp. v. Ortiz*, 753 S.W.2d 238, 242 (Tex.App.—Corpus Christi 1988, writ denied) ("[Complainants] generally have a duty to make a full and fair disclosure of all evidence to police and a failure to make material exculpatory information known to the police could be evidence of a hostile motive or insufficient grounds.").

Farris's internal report on the incident read as follows:

> Subject removed 1 pack cigarettes from rack at front of store and placed them in his buggy. Subject went down aisle # 8 (dog food) and placed cigs in pocket of coat. Subject shopped for approx. 15 mins. and left store. Subject was stopped in parking lot.

Farris failed to mention that Richey went through the check-out stand once, paid $51.00 dollars for groceries, saw the charity display, re-entered the store, paid almost $9.00 for more groceries for the charity bin, left the store again, and then offered to pay for the cigarettes outside the store. If one read only the internal report, one would believe that Richey walked down one aisle, put the cigarettes in his pocket, and then left the store without paying for *any food at all*, much less re-entering to pay for more food for charity.

Likewise, Farris's report to the police was incomplete and misleading. The relevant portions of the police report read as follows:

> Farris stated that Richey came into the store and got a shopping cart. Richey then got the above item [the cigarettes] and placed it in the shopping cart. Farris stated that Richey continued to shop for about 15 minutes. Farris advised that while Richey was shopping, Richey took the above listed item out of the shopping cart and placed it inside a coat pocket. Richey then went through the check-out line and paid for some other items and left the store. Farris then detained Richey in the parking lot and escorted Richey back inside the store.

Obviously, there is no mention by Farris of Richey re-entering the store to purchase more groceries for charity and no mention of Richey's offer to pay cash for the cigarettes upon being reminded of his oversight. Farris omitted only evidence tending to show that the taking was accidental. This is precisely the type of material omission that this Court has held to be evidence that there was no probable cause to press criminal charges. *See Keever*, 888 S.W.2d at 794–95.

The importance of a complete police report cannot be overstated. Retailers wishing to notify the authorities of every case of suspected shoplifting and to avoid the role of amateur police officers may discharge their duty by providing a thorough report to the police and the prosecuting authorities. This allows the authorities to weigh all of the exonerating and incriminating evidence and to make an informed decision regarding the merits of a particular case. While the Court restricts this kind of evidence to the causation or malice elements of malicious prosecution, I view such evidence as relevant to a complaining party's motives and beliefs, and thus probative on the issue of probable cause.

Finally, while Richey did admit that Farris had probable cause to stop him and ask about the cigarettes, he never admitted that a reasonable person would have inferred from the taking itself that the taking was intentional. He never said that Farris should have ignored the groceries that he bought for himself, his re-entry to buy more

groceries for charity, and his offer to pay cash for the cigarettes. He characterized his taking the cigarettes as a "mistake" and answered affirmatively to a question that assumed that he had no intent to steal. The Court thus confuses the probable cause relevant to a false imprisonment claim—probable cause to stop—with the probable cause relevant to a malicious prosecution claim—probable cause to believe that the taking was intentional. If Brookshire had to show only that it had probable cause to *detain* Richey to avoid liability for malicious prosecution, then Richey's testimony would dispose of the issue. However, the question is whether probable cause existed, not to stop Richey, but to file a complaint. Instead of evaluating all of the evidence supporting the finding of no probable cause, the Court focuses on the one event that would suggest Richey took the pack intentionally. This fixation on one piece of evidence with regard to one event, to the exclusion of nearly all other evidence, violates the proper standard of review.

"Once these opposing parties have entered into a factual contest on the issue of probable cause, a fact issue is created for resolution by the trier of fact. This is a cornerstone of our judicial system." *Akin*, 661 S.W.2d at 920. Applying this principle, I conclude that Richey produced legally sufficient evidence to support the jury finding that Brookshire pursued criminal charges against him without probable cause. The Court, unfortunately, while acknowledging the need for balance between vigilant law enforcement and the liberty interest of those unjustly accused, creates what is in effect a rule of strict nonliability for store owners—if a customer takes something out of a store without paying for it, regardless of the circumstances, the customer is a thief and the store owner cannot be held liable for malicious prosecution. By turning disputed facts into a question of law in this case, the Court has simply substituted its opinion for that of the jury. I cannot be part of such an illegitimate exercise of power. Accordingly, I dissent.