Opinion issued November 1, 2007







 









In The

Court of Appeals

For The

First District of Texas





NO. 01-06-00757-CV



NICHOLAS SUMMERVILLE, Appellant


V.


ALLIED BARTON SECURITY SERVICES, INDIVIDUALLY AND D/B/A
ALLIED SECURITY AND TOM SMITH, Appellees





On Appeal from the 270th District Court

Harris County, Texas

Trial Court Cause No. 2005-27887




O P I N I O N


 After he was arrested for criminal trespass, appellant, Nicholas Summerville,

sued appellees, Allied Barton Security Services, individually and d/b/a Allied
Security, and Tom Smith, for malicious prosecution. The trial court granted summary
judgment for appellees, and, in two issues on appeal, Summerville contends that the
summary judgment was improper because (1) appellees initiated his prosecution on
the basis of something other than a reasonable belief that he was guilty and (2) Smith
admitted that he did not have any knowledge or evidence that Summerville was guilty
of criminal trespass at the time that the prosecution was initiated. We affirm.

Background (1)


 There had been several jewelry store robberies in some area shopping malls. 
According to witnesses, they all occurred the same way: an African-American male
would ask to see an expensive ring, and, once the salesperson gave him the ring, he
would then run from the store with the ring. 

 On January 21, 2005, Luis Aguilar, an employee at the Helzberg Diamonds in
Baybrook Mall, assisted the appellant who had asked to see rings in the $1000 range. 
Aguilar said appellant, an African-American male wearing a ripped jacket, appeared
nervous with sweat on his forehead, and he had an unknown white substance on his
hand. Appellant also appeared reluctant to touch anything while in the store. After
appellant asked to see the most expensive diamond in the store, Aguilar asked a co-worker to notify mall security. 

 Mary Ann Flores, who also worked at Helzberg Diamonds, had seen appellant
enter the store the previous week and ask to use the telephone behind the sales
counter. At that time, Flores responded that customers were not allowed behind the
counter, but told appellant that he could use the phone on the sales floor. Flores said
appellant got very angry and accused her of discriminating against him because he
was black. Flores also explained that she had been asked to help with appellant that
day because he had asked to see the most expensive diamond in the store. She asked
if he had an account; he said he did, but he refused to show any identification despite
being asked for it three times. Finally, appellant asked her to leave so that he could
concentrate on one salesperson. Flores also noticed the white substance on
appellant's hand, which he attributed to chemicals that he had handled in the lab at
NASA, his alleged employer. 

 Tom Smith, the director of security at the Baybrook Mall, noticed appellant
acting suspiciously while shopping in Helzberg Diamonds. Lauren Barkdull, a
security officer on duty at Baybrook Mall, headed toward the mall security office,
which is located in a restricted access hallway behind the stores. She saw appellant
walk past the security office door in the restricted hallway, and he walked back and
forth a couple times before he came in and asked her if someone had called security
on him. She noticed that appellant appeared nervous and was sweating, and she told
him that no one had notified them. Appellant walked back down the restricted
hallway into the mall.

 Officer Thornburg from the Houston Police Department, was working at the
mall as a security officer for Dillard's Department Store. Mall security notified him
that there was a shopper who matched the description of the "snatch and grab"
suspect. Officer Thornburg followed appellant and saw him enter the food court. 
Security dispatch informed him that appellant had entered an area restricted to
employees only. Officer Thornburg stopped appellant as he was leaving the mall. 
Because he had no backup, Officer Thornburg handcuffed appellant and took him to
the security office. He had to maintain a firm grip because appellant repeatedly
slowed down and tried to pull away. 

 Appellant told Officer Thornburg that he worked for NASA and had come to
Helzberg Diamonds on his lunch hour to buy his wife a ring. He followed the mall
security officer into the hallway to find out if he was being watched. Appellant told
Officer Thornburg that he did not see the sign on the door, which noted that there was
no public access. Appellant was charged with criminal trespass. During his
deposition in this malicious prosecution case, Officer Thornburg testified that he got
a call over the radio that someone was running through the access hallway behind
doors bearing signs that read "Authorized Personnel Only." His initial conclusion
was that "he was trying to evade us." Thornburg testified that Summerville's "actions
leading up to [the arrest] were highly suspicious," and he had probable cause to arrest
Summerville for criminal trespass." Thornburg acknowledged that the facts and
suspicions that lead him to believe that Summerville was committing a crime came
from information given to him by other people.

 Summerville stated that, under the direction of Smith, he was handcuffed and
forcibly detained by Officer Thornburg for more than four hours in the mall security
office before being exonerated as the "snatch and grab" jewelry thief. In his
deposition during this malicious prosecution case, Summerville testified that Officer
Thornburg drew his gun, put it up to Summerville's head, and said, "Get the fuck up
against the God damn wall and you better not fucking move. Get up against the wall
you son of a bitch." Summerville believed that Tom Smith had Officer Thornburg
detain him so that he could be identified for the jewelry "snatch and grabs." He
believed this because Smith yelled, "That's him" when Thornburg detained him. 
Summerville further testified that, after he was exonerated for the robberies and while
he was still being detained:

 Then Tom Smith - and then he told me after the room he said, "You
niggers think you always have your run of the mall." And then I told
him - I said, "Man this is just straight racism." He said, "yeah, boy, I'm
going to show you how much of a bigot I am, nigger." He said, "I can't
stand you niggers and Mexicans." I never had anybody talk to me like
that and I'm a senior engineer on a rocket booster propulsion for the
space shuttle. 


 Summerville sued AlliedBarton Security Services, Individually and d/b/a
Allied Security, and Tom Smith alleging that he had been racially profiled, verbally
abused, and falsely accused of criminal trespass, which caused him great
embarrassment, mental anguish, and humiliation. Summerville stated that the
"charges were soon thereafter dropped by the Harris County District Attorney for lack
of probable cause." 

 The defendants filed a traditional motion for summary judgment in which they
contended there was probable cause for Summerville's arrest because "it is
undisputed that [Summerville] entered an area of the mall without effective consent
and there were signs posting notice that the entrance was forbidden." (2) Without
stating its reasons, the trial court granted the motion and ordered that Summerville
take nothing. This appeal followed.

Standard of Review

 A party moving for a traditional summary judgment must conclusively prove
all of the elements of its cause of action or defense as a matter of law. Tex. R. Civ.
P. 166a©; Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex.
2001); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 222-23 (Tex. 1999). When, as
here, a summary judgment does not specify or state the grounds on which the trial
court relied, the non-movant on appeal must negate any grounds on which the trial
court could have relied, and we will affirm the summary judgment on appeal if any
of the grounds presented in the motion is meritorious. See Harwell v. State Farm
Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995); Mellon Serv. Co. v. Touche
Ross & Co., 17 S.W.3d 432, 435 (Tex. App.--Houston [1st Dist.] 2000, no pet.). A
non-movant is required to show that each ground alleged in the motion for summary
judgment was insufficient to support summary judgment. Star-Telegram, Inc. v. Doe,
915 S.W.2d 471, 473 (Tex. 1995).

Malicious Prosecution

 In two issues, Summerville contends that the summary judgment was improper
because (1) appellees initiated his prosecution on the basis of something other than
a reasonable belief that he was guilty and (2) Smith admitted that he did not have any
knowledge or evidence that Summerville was guilty of criminal trespass at the time
that the prosecution was initiated.

 A plaintiff in a malicious criminal prosecution claim must establish

 (1) the commencement of a criminal prosecution against the plaintiff;

 (2) causation (initiation or procurement) of the action by the defendant;

 (3) termination of the prosecution in the plaintiff's favor;

 (4) the plaintiff's innocence;

 (5) the absence of probable cause for the proceedings;

 (6) malice in filing the charge; and

 (7) damage to the plaintiff.


Richey v. Brookshire Grocery Co., 952 S.W.2d 515, 517 (Tex. 1997). Here,
Summerville asserts that there was no probable cause. Probable cause is defined as
"the existence of such facts and circumstances as would excite belief in a reasonable
mind, acting on the facts within the knowledge of the prosecutor [complainant], that
the person charged was guilty of the crime for which he was prosecuted." Id. The
probable cause element asks whether a reasonable person would believe that a crime
has been committed given the facts as the complainant honestly and reasonably
believed them to be before the criminal proceedings were instituted. Kroger Tex. Ltd.
P'ship v. Suberu, 216 S.W.3d 788, 792-93 (Tex. 2006); Richey, 952 S.W.2d at 517. 
Courts must presume that the defendant acted reasonably and had probable cause to
initiate criminal proceedings. To rebut this presumption, the plaintiff must produce
evidence that the motives, grounds, beliefs, or other information upon which the
defendant acted did not constitute probable cause. Suberu, 216 S.W.3d at 793. 

 To prevail in a malicious prosecution case, the plaintiff must prove not only
that defendant commenced criminal proceedings against him and he is innocent of the
crimes charged, but also that the defendant lacked probable cause and harbored
malice toward him. Id. at 792. Malicious prosecution actions involve a delicate
balance between society's interest in the efficient enforcement of the criminal law and
the individual's interest in freedom from unjustifiable and oppressive criminal
prosecution. Richey, 952 S.W.2d at 517. Accordingly, there is an initial presumption
in malicious prosecution actions that the defendant acted reasonably and in good faith
and had probable cause to initiate the proceedings. Id. That presumption disappears
once a plaintiff produces evidence that the motives, grounds, beliefs, and other
evidence upon which the defendant acted did not constitute probable cause. Id. at
518. The burden then shifts to the defendant to offer proof of probable cause. Id.

 Whether probable cause is a question of law or a mixed question of law and
fact depends on whether the parties dispute the underlying facts. Id. When the facts
underlying the defendant's decision to prosecute are disputed, the trier of fact must
weigh evidence and resolve conflicts to determine if probable cause exists, as a mixed
question of law and fact. Id. It has long been true, however, that, "[w]hen the facts
are not contested, and there is no conflict in the evidence directed to that issue, the
question of probable cause is a question of law which is to be decided by the court." 
Id. (quoting Ramsey v. Arrott, 64 Tex. 320, 323 (1885)); see also Landa v. Obert, 45
Tex. 539, 543 (1876) ("[w]hat facts and circumstances amount to probable cause is
a pure question of law"). Probable cause in this case, in which the facts and events
leading up to Sommerville's arrest are undisputed, is therefore a question of law for
the court and not the trier of fact. See Richey, 952 S.W.2d at 518.

Probable Cause

 In issue one, Summerville contends that the summary judgment was improper
because appellees initiated his prosecution on the basis of something other than a
reasonable belief that he was guilty.

 Because lack of probable cause in this case is a question of law, the issue for
the Court is whether the undisputed facts underlying the decision to prosecute support
a reasonable belief that Summerville was guilty of criminal trespass. A person
commits the offense of criminal trespass if he enters or remains on or in property of
another without effective consent or he enters or remains in a building of another
without effective consent and he (1) had notice that the entry was forbidden or (2)
received notice to depart but failed to do so. Tex. Pen. Code Ann. § 30.05 (Vernon
Supp. 2006). "Notice" includes a sign posted on the property or at the entrance to the
building, reasonably likely to come to the attention of intruders, indicating that entry
is forbidden. Id. In the malicious prosecution context, whether a person acted based
upon probable cause is a question of reasonableness. Richey, 952 S.W.2d at 517. 
That is, it is a question of whether the complainant honestly and reasonably believed
that another's actions were criminal. Id.

 Here, it is undisputed that Summerville entered an area of the mall without
effective consent and there were signs posting notice that the entrance was forbidden. 
Summerville argues, however, that "the record is replete with conflicting evidence
regarding improper motives and racial bias in initiating the prosecution for criminal
trespass." Citing to Suberu, Summerville contends that evidence of racial animus
destroys the presumption of probable cause showing intention of a criminal
prosecution on the basis of something other than the reasonable belief of a person's
guilt. He further argues that, "based on evidence that Summerville's prosecution for
criminal trespass was based on motives, grounds, and beliefs other than probable
cause, summary judgment was improper." We disagree.

 Suberu holds that, to prevail in a malicious prosecution case, plaintiff must
prove not only that defendant commenced criminal proceedings against him and he
is innocent of the crimes charged, but also that the defendant lacked probable cause
and harbored malice toward him. Suberu, 216 S.W.3d at 792. In other words, once
the plaintiff produces evidence that the defendant harbored malice toward him and
thus, lacked probable cause, the presumption that the defendant acted reasonably, in
good faith, and had probable cause disappears, and the burden shifts to the defendant
to prove probable cause. See Richey, 952 S.W.2d at 518.

 Summerville does not deny that he entered a restricted area. He simply
contends that, because of racial profiling, he was arrested for doing so. We hold that
appellees carried their burden of proving that there was probable cause to arrest
Summerville for criminal trespass. Accordingly, we overrule issue one.

Absence of Belief in Guilt

 In issue two, Summerville contends that Smith admitted that he did not have
any knowledge or evidence that Summerville was guilty of criminal trespass at the
time that the prosecution was initiated, thus negating probable cause and establishing
"impropriety of process." Summerville directs us to the following exchange, which
took place during Smith's deposition:

 Q. I mean do you have any explanation for me today, Mr. Smith, as to, No. 1, why you're listed as the complainant on Exhibit 1? Do you know why?

 A. First of all, you - you're blending two different offenses. The offense that Thornburg responded to was not a criminal trespass. 


 He responded to a complaint in a jewelry store of a suspicious male that was believed by the complainant to the be the snatch-and-grab suspect. That's what he was responding to. That's where the Glock came from. That's where the arrest happened. 


 How it degenerated into a criminal trespass, you're going to have
to ask Thornburg. I didn't sign a complaint. I did not make a complaint. A Houston policeman arrested him. A Houston policeman came and got him, and that's about all I know about it.


 Q. You did not initiate the complaint for criminal trespass against my
 client?


 A. No, sir.


 Q. Is that what you're telling me?


 A. Yes, sir.


 Q. And that's because you don't have any evidence that he was guilty of criminal trespass, correct?


 A. Actually, I didn't until you told me about his following Lauren back into a restricted area.


 Q. Well, you knew about that before your deposition today.


 A. Yes, sir. I didn't know it was in evidence. 


Summerville contends that Smith, the complainant, did not believe Summerville was
guilty of criminal trespass, thus negating the probable cause and rendering summary
judgment improper. Thornburg testified, however, that he needed "a person to file
charges, to be the complainant," and Smith was "a representative of the mall." 
Thornburg testified that he detained Summerville because "he had gone back in the
access hallways." Thus, it was Thornburg, and not Smith, who initiated charges
against Summerville for criminal trespass. 

 Citing to Suberu, Summerville further argues that "racial animus can be the
basis of negating probable cause and proving that a defendant's motives do not
support a reasonable belief that the plaintiff was guilty of criminal trespass." We
disagree. Suberu stands for the proposition that, once a plaintiff has produced
evidence of racial animus, the presumption that the defendant had probable cause is
negated, and the burden shifts back to the defendant to prove probable cause. Suberu,
216 S.W.3d at 793. Here, probable cause was established by the uncontested
evidence that Summerville entered a restricted area.

 We overrule issue two. 

Conclusion

 We affirm the trial court's judgment.




George C. Hanks, Jr.

Justice


Panel consists of Justices Taft, Hanks, and Higley. 





 
1. 
[1] The "facts" are elicited from witness statements in the original mall offense report and from deposition testimony attached to the motions for summary judgment.
2. 
 [2] The motion for summary judgment also addresses Summerville's false imprisonment
and intentional infliction of emotion distress claims, which he has since abandoned.