**Affirmed and Memorandum Opinion filed June 26, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00413-CV

---

### BRETT RICHARDS, Appellant

### V.

### CHRIS TEBBE, Appellee

---

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2007-36132**

---

## M E M O R A N D U M   O P I N I O N

In this appeal from the judgment after a nonjury trial, defendant Brett Richards challenges the sufficiency of the evidence supporting the trial court's findings concerning (a) the elements of probable cause and malice necessary to establish liability for malicious prosecution, (b) the damages awarded for the plaintiff's physical pain and mental anguish from the defendant's civil assault, and (c) the malice necessary to sustain exemplary damages. He also argues that the

trial court abused its discretion in permitting the plaintiff's counsel to impeach him using his testimony from his criminal trial. Because the trial court's findings are supported by the evidence and the defendant was not unfairly surprised or prejudiced by the references to his prior inconsistent sworn testimony, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

During their relationship, Brett Richards and Dana Grace had a child and bought a house together.[1] After their relationship ended, Dana began dating appellee Chris Tebbe in July 2006. On two or three occasions, Brett was at the house and answered the phone when Chris called. Chris asked to speak to Dana, and Brett handed her the phone. The evidence is undisputed that this is the full extent of the telephone conversations between Chris and Brett. Nevertheless, on August 8, 2006, Brett reported to the Houston Police Department that Chris had been making harassing telephone calls to him. A Houston police officer called Chris, but he was not prosecuted for this complaint.

## A.     The Basis of the Malicious-Prosecution Claim

Brett next reported to the police that on October 14, 2006, Chris threatened to kill him. Chris was prosecuted for assault by threat but was acquitted. There are two versions of the events that transpired on the day of the alleged threat. Both concern events that took place near the house that Dana and Brett owned, but by the date of the alleged threat, Dana had moved out, and Brett and his wife Mandy had moved in.

According to Brett and Mandy, the two of them were leaving the house in Brett's truck to run some errands, and Brett noticed a car parked outside of a neighbor's house "at the front of the street." As Brett drew closer, he noticed that

---

[1] Because the parties share the same surname with others who testified at trial, we identify each witness by his or her first name.

Chris was sitting in the car. Brett pulled over next to the car and asked Chris, "Can I help you?" Chris responded, "I'll fucking kill you." Brett testified that he then got on the freeway where Chris followed him for several miles. Brett stated that he called the police, and the police told him to file a complaint.

According to Chris and Dana, Dana needed to retrieve her belongings from the house, and her attorney advised her to go when Brett was not there. Chris and Dana went to the area in separate vehicles, and Dana parked at a nearby shopping center while Chris drove to the house to see if Brett was home. Chris parked on the street in front of a neighbor's property and took photos of the house. The photos show Brett and Mandy's unoccupied vehicles in front of the house. Chris stated that he left without ever seeing or speaking to anyone. Within about two minutes after he left Dana at the shopping center, he rejoined her and told her that Brett's truck was at the house, so they would have to get her things another time. Chris stated that while he and Dana were talking, he saw Brett's truck being driven out of the subdivision, so he and Dana drove away. According to Chris, Brett pursued him, and the vehicles reached speeds exceeding 90 mph while Brett tried to swerve into Chris and cause a collision.

**B.      The Period Between the Two Claims**

In October 2007, Dana and Chris married, but according to their testimony, Brett's animosity toward Chris continued unabated. Dana testified that Brett complained to Child Protective Services that Chris had attempted to physically harm Dana's son, but after investigating, the agency found the allegations unfounded. She stated that Brett also attempted to file charges of child endangerment, alleging that Chris hit Dana's son on the head, but the charges were not accepted. Dana testified that Brett also told her, "Tell your husband if he ever stares me down like that again I'll kick his—." Because of Brett's

3

"repetitive . . . threats and insults," Dana filmed the exchanges of possession when her son visited Brett.

## C.     The Basis of the Civil-Assault Claim

In September 2008, Brett came to Dana and Chris's residence to pick up his son. Brett's brother John filmed the exchange from across the street, and Chris filmed it from the house, but neither video was offered as evidence at trial. When the child began to run to the street, Chris picked the boy up with his free hand. While Chris had the child in one hand and a camera in the other, Brett punched Chris in the face, then put him in a headlock and continued punching him in the face while Chris tried to shake off the camera strapped to his hand. Chris testified that Brett forced his hand in Chris's mouth while putting Chris in a headlock, and Chris bit Brett's finger. Chris broke free and backed up, but Brett charged after him, retreating only when Chris drew a gun.[2] Brett's brother John similarly testified that when the child began running, Chris scooped him up with the hand that was not holding the camera. John said that Brett's body blocked some of what followed from view, but he admitted there was "maybe a headlock-type situation."

Brett testified that he and Chris reached the boy at about the same time, and Brett put up his left hand in a "stop" position as Chris was bending down to pick up the child. According to Brett, "my hand and his face connected." Brett explained that in self-defense, "I struck [Chris three times] at the time my hand was in his mouth." After Chris broke free and backed up, Brett admittedly continued to advance toward him until Chris drew his gun.

## D.     The Trial

Chris sued Brett for malicious prosecution and assault, and prevailed on both

---

[2] Chris has a concealed-handgun license.

4

claims. After the nonjury trial, the trial court issued findings of fact and conclusions of law in which it found that the harm to Chris from each claim was the result of malice. The trial rendered judgment ordering Brett to pay Chris compensatory damages of $16,303[3] and exemplary damages of $30,000 for malicious prosecution, and compensatory damages of $15,000 and exemplary damages of $30,000 for assault.

## II. MALICIOUS PROSECUTION

To prevail in a malicious-prosecution claim, a plaintiff must prove that the defendant acted maliciously and without probable cause in initiating or procuring the innocent plaintiff's criminal prosecution; that the prosecution terminated in the plaintiff's favor; and that the plaintiff was damaged. *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997). Brett contends that the trial court erred in holding him liable for malicious prosecution because there is legally and factually insufficient evidence to support the trial court's findings that he acted without probable cause and with malice.

In evaluating the evidence supporting the challenged findings, we apply the familiar standards of review for legal and factual sufficiency. To analyze the legal sufficiency of the evidence supporting a finding, we review the record in the light most favorable to it, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In reviewing a factual-sufficiency challenge, we consider and weigh all the evidence in a neutral light and will set aside the finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Green v. Alford*, 274 S.W.3d 5, 23 (Tex. App.—Houston [14th Dist.] 2008,

___

[3] This amount is not challenged on appeal.

5

pet. denied) (op. on reh'g en banc) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam)).

**A.    The record supports the trial court's finding that Brett did not reasonably believe that Chris committed assault by threat.**

A complainant has probable cause to initiate or procure a criminal prosecution if he reasonably believed that the elements of a crime had been committed based on the information available to him before the criminal proceeding began. *Richey*, 952 S.W.2d at 519. Brett procured Chris's prosecution for assault by threat, a crime that is committed by "intentionally or knowingly threaten[ing] another with imminent bodily injury." TEX. PENAL CODE ANN. § 22.01(a)(2) (West Supp. 2013). We therefore review the record for evidence relevant to the question of whether Brett reasonably believed that Chris intentionally or knowingly communicated such a threat. *See Olivas v. State*, 203 S.W.3d 341, 342 (Tex. Crim. App. 2006) (explaining that to commit the offense, a person must "communicate a threat of imminent bodily injury" (citing *McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984))). Where, as here, the facts are disputed, the existence of probable cause is a mixed question of law and fact. *Richey*, 952 S.W.2d at 518.

We begin our review by presuming that the complainant acted reasonably and in good faith, and that the complainant had probable cause to initiate or procure the criminal prosecution. *Id.* at 517. The presumption disappears if the accused produces evidence that the motives, grounds, beliefs, and other evidence upon which the complainant acted did not constitute probable cause. *Id.* at 518. This can include evidence of the parties' prior bad relations. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 795 (Tex. 2006). Once the presumption is dispelled, the burden shifts to the complainant to offer proof of probable cause. *Id.*

6

Chris overcame the presumption of probable cause by producing evidence that Brett was motivated by personal animus. Brett testified that in August 2006, Dana moved out of the house she had shared with him and began living with Chris, and Brett hired a private investigator to research Chris. Although Dana testified to a different order of events, it is the responsibility of the factfinder to weigh credibility and resolve conflicts in the evidence, and we will defer to those determinations so long as they are reasonable. *See City of Keller*, 168 S.W.3d at 819–20 (applying this principle to legal-sufficiency review); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (applying the same principle to factual-sufficiency review). Brett testified that he did not ask the investigator to engage in surveillance, but both Chris and Dana testified that they saw the investigator on the street outside the house. After hiring the investigator, Brett made his first complaint to police in August 2006, alleging that Chris had been making harassing telephone calls to him. The evidence is uncontroverted that this complaint was completely unfounded; Chris had done nothing more than dial Dana's number and ask to speak to her while she was still living at the house that she and Brett owned. The evidence of Brett's conduct toward Chris in the months before Brett reported that Chris threatened to kill him shows that Brett harbored personal animosity toward Chris.

Because Chris rebutted the initial presumption, the burden shifted to Brett to prove that he had probable cause to file the complaint of assault by threat. Brett asserts that the undisputed facts establish that he acted with probable cause. We disagree. What is undisputed is that on the day of the alleged threat, Chris spent approximately two minutes parked on the street where his girlfriend owned property. He was not parked in front of that house, but in front of a neighbor's house. He approached no one; he initiated no conversations; he did not even leave

7

his car. Although he took pictures of the house, there is no evidence that Brett or Mandy knew of this before the criminal prosecution, and in any event, doing so did not communicate a threat of imminent bodily harm. It also is undisputed that Chris has a concealed-handgun license, but it is not alleged that he displayed a gun, mentioned one, or even carried one on this occasion. The only other fact that is beyond dispute is that Brett reported to police that Chris orally threatened to kill him. Brett testified that he feared for his safety and that of his wife, but that is inconsistent with Chris's testimony and even with Brett's testimony that he pulled over beside Chris's parked car, thereby bringing both Brett and his wife within a few feet of the person Brett claimed to fear. Brett also testified that he filed a complaint on the instructions of the police, but a reasonable factfinder could have concluded that Brett simply decided on his own to file another false report.

On this record, a reasonable factfinder could have concluded that Brett failed to prove he reasonably believed that Chris intentionally or knowingly communicated a threat of imminent bodily injury. We therefore overrule this issue.

**B.    The record also supports the finding that Brett acted with malice**.

Brett asserts that there is legally and factually insufficient evidence of malice because he testified that he believed he acted in good faith when he filed a police report stating that Chris threatened to kill him. But knowingly providing false information to the police is relevant to the element of malice, *see Richey*, 952 S.W.2d at 519, and such an implied finding is supported by the record.

Brett and Mandy testified that Chris threatened to kill Brett, but Chris flatly contradicted that testimony, and both versions of events could not be correct. The trial court resolved the conflict by making a reasonable credibility determination. The trial court expressly found that it "did not find [Brett's] claim that he was

threatened to be credible" and stated on the record that it "believed [the criminal complaint] was completely made up out of whole cloth." Because the evidence supports the implied finding that Brett knowingly made the false report, there is legally and factually sufficient evidence that Brett acted with malice. We overrule this issue.

## III. CIVIL ASSAULT

Brett next contends that the trial court erred in awarding Chris damages for physical pain and mental anguish on the assault claim. Citing *Reardon v. LightPath Technologies, Inc.*, Brett asserts that the trial court could award no damages for physical pain because Chris did not seek medical care or take pain medication, and "[t]here can be no recovery for damages that are speculative or conjectural." *Reardon*, 183 S.W.3d 429, 442 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *A.B.F. Freight Sys., Inc. v. Austrian Import Serv., Inc.*, 798 S.W.2d 606, 615 (Tex. App.—Dallas 1990, writ denied) (op. on reh'g)). As for mental anguish, Brett argues that a plaintiff must present either (a) direct evidence of the nature, duration, or severity of the anguish; or (b) other evidence of "a high degree of mental pain and distress" that is "more than mere worry, anxiety, vexation, embarrassment, or anger." *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995).

We are hampered in our ability to meet one of these arguments head-on, because Brett briefed this issue as though there were independent findings of physical-pain damages and mental-anguish damages. There are not. The trial court instead found that as a result of Brett's assault, Chris "was damaged in the amount of $15,000.00 for the physical pain *and* mental anguish." (emphasis added). In asserting that the evidence of mental-anguish damages does not meet the standard set forth in *Parkway*, Brett has made an argument that does not apply

to the trial court's finding, because *Parkway* applies only to evidence of mental anguish. The trial court's finding is stated in the conjunctive, and thus, it can be supported by evidence of physical pain, mental anguish, or any combination of the two. *See Shamrock Commc'ns, Inc. v. Willie*, No. 03-99-00852-CV, 2000 WL 1825501, at *11–12 (Tex. App.—Austin Dec. 14, 2000, pet. denied) (not designated for publication) (rejecting argument that damages in a defamation case did not meet the *Parkway* standard for mental-anguish damages because the jury charge listed the separate elements of damages in the conjunctive, and the award for "mental pain, mental anguish, shame, embarrassment and humiliation" was supported by evidence of humiliation). Brett did not ask the trial court to make additional or amended findings of fact that would allow this court to review the sufficiency of the evidence of mental anguish independently from the evidence of physical pain.

On the other hand, Brett's assertion that "there can be no recovery for damages that are speculative or conjectural" is broad enough to apply to the trial court's physical-pain-and-mental-anguish finding, and we address it in that light. Although Brett has accurately quoted our statement in *Reardon* about speculative damages, that statement does not apply here. In *Reardon* and the case on which it relies, the tortfeasor allegedly injured the plaintiffs by causing them a financial loss, and the amount required to fairly and reasonably compensate a plaintiff for a financial loss normally is susceptible to mathematical calculation. But the same cannot be said of all injuries. Physical pain and mental anguish are inherently subjective. *Parkway*, 901 S.W.2d at 444 (mental anguish); *Enright v. Goodman Distrib., Inc.*, 330 S.W.3d 392, 397 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (physical pain). As a result, the damages associated with a physical injury are "not subject to precise mathematical calculation." *Weidner v. Sanchez*, 14 S.W.3d

10

353, 372 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Recognizing this distinction, we repeatedly have stated that these injuries are compensable even though the damages are "speculative." *See, e.g.*, *Belford v. Walsh*, No. 14-09-00825-CV, 2011 WL 3447482, at *7 (Tex. App.—Houston [14th Dist.] Aug. 9, 2011, no pet.) (mem. op.); *Cox v. Centerpoint Energy, Inc.*, No. 14-05-01130-CV, 2007 WL 1437519, at *6–7 (Tex. App.—Houston [14th Dist.] May 17, 2007, no pet.) (mem. op.); *Weidner*, 14 S.W.3d at 372.

The trial court's finding is supported by the record. Chris presented uncontroverted testimony that Brett punched him in the face three times, causing a black eye, a knot on his head, and a laceration. The bruise and the laceration took about two weeks to heal. Chris testified that although the injuries were not "significant enough to go to a hospital," the pain from the injuries "was significant." In addition, Dana testified that Chris was "upset" about the confrontation. This evidence is legally and factually sufficient to support the award of $15,000 even though no evidence of medical treatment was presented. *See Country Roads, Inc. v. Witt*, 737 S.W.2d 362, 365 (Tex. App.—Houston [14th Dist.] 1987, no writ) (affirming award of $15,000 for physical pain and mental anguish for two black eyes, a swollen lip, and some chest abrasions, where the only medical treatment required was to clean the injuries and the plaintiff was "pretty sore for about a month"). We therefore overrule this issue.

## IV. EXEMPLARY DAMAGES

To prevail in his claim for exemplary damages, Chris was required to prove by clear and convincing evidence that the harm he suffered as a result of Brett's conduct was the result of fraud, malice, or gross negligence. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003 (West 2008 & Supp. 2013). In connection with each of Chris's causes of action, the trial court found from clear and convincing evidence

11

that the harm to Chris was the result of malice. For the purpose of the exemplary-damages statute, malice is defined as "a specific intent by the defendant to cause substantial injury or harm to the claimant." *Id.* § 41.001.

Brett contends that the evidence is legally and factually insufficient to support the malice findings. Because a higher standard of proof applies to these findings, we also apply a higher standard of review. In reviewing the legal sufficiency of the evidence to support each malice finding, we consider all the evidence in the light most favorable to the finding, disregarding all evidence that a reasonable factfinder could have disbelieved, and determine whether a reasonable factfinder could have formed a firm belief that the finding was true. *See Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). The evidence is factually insufficient only if, "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction" that the finding was true. *In re J.F.C.*, 96 S.W.3d at 266.

We conclude that a reasonable factfinder could have credited all of the testimony that supports the malice findings, and that the evidence we detailed at the start of this opinion is sufficient to support the findings that Brett specifically intended to cause Chris substantial injury or harm. Such an intent is shown not only by the circumstances on the day that Brett committed the acts on which the judgment is based, but also by his frequent threats and repeated reports of misconduct. In connection with the malicious-prosecution claim, we note that the false imputation of a crime does more than expose the accused to the penalties provided under the criminal law. The damage to a person's reputation from such a statement is so likely to occur that under the civil law, the false imputation of a

crime is defamatory per se. *See Memon v. Shaikh*, 401 S.W.3d 407, 421 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A reasonable factfinder could have concluded that Brett made repeated false complaints of criminal conduct not only to increase the risk that Chris would face criminal penalties, but also to increase the damage to his reputation. Regarding the assault claim, the intent to cause substantial injury can be seen in the evidence that Brett struck Chris only when he could see that Chris was not in a position to fight back—and even then, Brett put Chris "in a headlock situation" in an apparent effort to prevent Chris from retreating or evading Brett's blows.

We overrule this issue.

## V. IMPEACHMENT EVIDENCE

Brett previously testified in his own defense in a criminal trial for assaulting Chris, but when testifying in this civil trial for the same conduct, Brett made several inconsistent statements and was impeached with his prior testimony. Brett objected on the ground that opposing counsel did not produce the transcript of the testimony in response to a request for disclosure of witness statements. The trial court overruled the objection in part, permitting the prior testimony to be used only for the purpose of impeachment, and not as a substantive exhibit. Brett challenges that evidentiary ruling, which we review for abuse of discretion. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). He argues that a party who fails to timely supplement a discovery response may not introduce into evidence the material or information that was not timely disclosed unless the trial court finds either that there was good cause for the failure or that the failure to timely supplement the response "will not unfairly surprise or unfairly prejudice the other parties." TEX. R. CIV. P. 193.6(a).

We conclude that the trial court did not abuse its discretion in concluding

13

that Brett was not "unfairly" surprised or "unfairly" prejudiced by facing impeachment with his own prior inconsistent sworn testimony. Brett is the sole defendant, and he was identified as a party with knowledge of relevant facts. *See Hoefker v. Elgohary*, 248 S.W.3d 326, 331 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (explaining that the appellant could not have been surprised by opposing counsel's testimony on remand concerning attorney's fees, because although the witness was not disclosed, the same witness testified on the same subject in the prior proceedings). Brett was aware that the testimony existed, and the transcript was as readily available to him as it was to Chris. *See Oscar Luis Lopez v. La Madeleine of Tex., Inc.*, 200 S.W.3d 854, 862 (Tex. App.—Dallas 2006, no pet.) (explaining that Rule 193.6 "applies when the *existence* of evidence was not disclosed in a timely manner") (emphasis added); *see also Williams v. County of Dallas*, 194 S.W.3d 29, 33 (Tex. App.—Dallas 2006, pet. denied) (holding that the appellant was not unfairly surprised by public tax records that were not produced in discovery or attached to pleadings in taxing unit's suit to collect delinquent ad valorem taxes, and noting that the appellant "had the same access to public tax records as the taxing units"); *Graff v. Whittle*, 947 S.W.2d 629, 639 (Tex. App.—Texarkana 1997, writ denied) (explaining that public records are not considered to be in the "possession, custody, and control" of any party).[4]

We overrule this issue.

---

[4] On appeal, Brett also argues for the first time that the trial court erred in allowing opposing counsel to use John's prior testimony for impeachment purposes. Because Brett failed to raise this objection in the trial court, it has not been preserved for our review. *See* TEX. R. APP. P. 33.1.

## VI. CONCLUSION

Having overruled each of the issues presented, we affirm the trial court's judgment.

/s/     Tracy Christopher
        Justice

Panel consists of Justices Boyce, Christopher, and Brown.