

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00059-CV

———————————————

GIANG VU AND LINH DONG, Appellants

V.

DARREN TRAN, Appellee

On Appeal from the 67th District Court
Tarrant County, Texas
Trial Court No. 067-321201-20

Before Kerr, Womack, and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellants Giang Vu and his wife, Linh Dong, appeal the trial court's judgment granting Appellee Darren Tran's motion to dismiss under the Texas Citizens Participation Act (TCPA). In two issues, Vu and Dong argue that (1) they established by clear and specific evidence a prima facie case for each essential element of their malicious prosecution claim and (2) the trial court erred by granting Tran's motion to dismiss under the TCPA. Because Vu and Dong did not make a prima facie showing as to their malicious prosecution claim, we affirm.

## II. BACKGROUND

Vu and Tran were partners in businesses that included Remco Pharmacy, Inc. (Remco), Pharmaceutical Development Group LLC d/b/a RX-Direct Home Delivery (RX-Direct), and Medical RX Services, Inc. (Medical RX). In August 2018, Remco and RX-Direct were placed on probation by the Texas State Board of Pharmacy for one year as a result of Vu's 2000 felony conviction for burglary of a habitation. According to Tran, around September 25, 2018, in an effort to have the probation lifted or reduced and with Vu's knowledge and consent, Remco and RX-Direct removed Vu as an officer and pharmacist.

Vu contends that on December 18, 2018, he was a fifty percent owner of Medical RX and RX-Direct, in addition to being a tenant and guarantor for the leased

2

premises ("Premises") utilized by Medical RX and RX-Direct in Arlington, Texas.[1] On the same date, Tran was not present on the Premises but was instead anticipating a meeting with Vu at a bank to discuss their business separation and to have Vu return some allegedly stolen money. While waiting for the meeting, Tran was contacted by Taylor Nguyen, a bookkeeper for Remco and RX-Direct, who told him that Vu had entered the Premises and disconnected a video camera, had attempted to gain access to Tran's and his wife's offices, and had used a meat cleaver to damage the door handles to the offices. According to Nguyen, Vu then left the Premises and returned with Dong and took some business records. These events were further evidenced by audio recordings made by Nguyen and photographs of the meat cleaver and a damaged door handle.

After telling Nguyen to contact building security, Tran called the Arlington Police Department and requested that they send someone to the Premises. The call to the Arlington Police Department is reflected in its "Incident Information" report, which states that the "Nature of [Tran's] Call" was criminal mischief and that the offense was theft of property and criminal mischief.

According to Tran, Vu was not supposed to be on the Premises because of his prior removal as an officer and pharmacist for RX-Direct. However, Vu claims that

---

[1]The lease for the Premises indicates that Vu, Tran, and Medical RX are the tenants, and the lease guarantors are Vu and Tran.

3

his presence on the Premises was valid because he was both an owner of Medical RX and RX-Direct as well as a tenant and guarantor for the Premises.

On December 19, 2018, Tran reported to the police that Vu had entered the Premises without consent or proper authorization, damaged an office door, and stole a large number of documents containing sensitive medical and financial information. Tran also told police that Vu and Dong were former employees who had been fired for embezzlement.

On December 21, 2018, Tran told the investigating detective that he was a "part owner" of RX-Direct and that Vu and Dong were former employees who had access to most of the company's resources. According to Tran, Vu and Dong had been fired in early December due to the suspected embezzlement, and they had cleared out their property from the office building, surrendered their keys, and were not allowed further access to the Premises. Moreover, Tran informed the investigator that he and "other board members" had told Vu and Dong that RX-Direct was "filing criminal and civil lawsuit charges." According to Vu and Dong, Tran never disclosed to the investigator the business partnerships he had with Vu, the ongoing business dispute, or Vu's status as a tenant of the Premises.

Vu contends that the Arlington Police Department sought a warrant for his arrest based on the information provided by Tran. Vu also claims that the investigating detective's narrative for probable cause relied on interviews with Tran. The arrest warrant affidavit, sworn to by an Arlington Police Department detective

4

before a Tarrant County magistrate, states that Vu "commit[ted] the offense of Burglary of Building, a FELONY, in that he did intentionally or knowingly, without the effective consent of Darren Tran the owner thereof, enter a building not then and there open to the public with intent to commit Theft." The affidavit also states that a different Arlington police officer had been dispatched to the Premises in "reference [to] a Criminal Mischief report" and that he spoke with Nguyen and Giang Ho (who is identified as the "manager on duty") about the incident. Further, additional officers "prepared a photo lineup," and Nguyen "identified with complete certainty [Vu as] the suspect who entered the office and stole files." Nguyen "also provided an audio recording of Vu striking the door handles in the office."

Around July 17, 2019, police arrested Vu and charged him with felony burglary of a building, and he subsequently spent three or four days in jail. Dong turned herself in on November 15, 2019, after seeing a billboard listing her as a "Top 10 Most Wanted Fugitive." Dong was also arrested and charged with felony burglary of a building and later spent approximately nine hours in jail.

On November 18, 2019, the Tarrant County grand jury no-billed the burglary charge against Vu. On November 25, 2019, the Tarrant County grand jury no-billed the burglary charge against Dong.

According to Tran, he is not a law enforcement officer or prosecutor and did not cause the arrest or prosecution of Vu or Dong; all he did was "fil[e] a Police Report with respect to [Vu's] and [Dong's] damaging the office door handles in a

5

threatening manner and taking certain business records from the Premises." In Tran's words,

> Other than filing the Police Report and providing the Arlington Police Department with certain documents they requested, I did not in any way persuade or influence the Arlington Police Department and Tarrant County District Attorney's Office to arrest [Vu] and [Dong] and charge them with burglary of a building. Those decisions were independently made by the Arlington Police Department and Tarrant County District Attorney's Office, using their own professional judgment and discretion.

Tran also contends that he did not appear at or provide testimony in connection with the grand jury proceedings.

In October 2020, Vu and Dong filed suit against Tran asserting malicious prosecution. Thereafter, Tran filed a motion to dismiss under the TCPA. After a hearing, the trial court granted Tran's motion to dismiss, and this expedited appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.008(b).

### III. DISCUSSION

Vu and Dong assert that all seven essential elements of a malicious prosecution claim were established and that the granting of the TCPA motion to dismiss was improper. Tran responds that Vu and Dong did not establish elements (2) (the defendant's causation of the prosecution), (4) (the plaintiff's innocence), (5) (lack of probable cause to initiate or procure the prosecution), and (6) (malice in filing the charge) of their claim and, therefore, the trial court correctly granted the motion to dismiss. We agree with Tran.

6

## A. TCPA Framework and Standard of Review

"The Legislature enacted the TCPA 'to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.'" *In re Panchakarla*, 602 S.W.3d 536, 538 (Tex. 2020) (orig. proceeding) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.002). Consistent with this legislative purpose, Section 27.003 of the TCPA provides that a party may file a motion to dismiss a legal action that "is based on or is in response to a party's exercise of" three rights: free speech, petition, or association. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a).

In deciding if a motion to dismiss should be granted, a trial court must follow a "three-step decisional process." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019). Under the first step, which is not in dispute here, the trial court must dismiss the action if the movant shows that the legal action is based on, relates to, or is in response to the movant's exercise of the right to free speech, petition, or association. *Id.* (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)). Then, under the second step, the court may not dismiss the action if the nonmovant establishes by "clear and specific evidence" a prima facie case for each essential element of the claim. *Id.* (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)). Under the third element, which is also not applicable here, the movant

7

can still win dismissal if he establishes each essential element of a valid defense to the nonmovant's claim. *Id.* (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d)). In determining whether dismissal is warranted, a trial court must consider "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a).

Neither the TCPA nor the common law defines "clear and specific evidence." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding). Clear has been interpreted as "unambiguous," "sure," or "free from doubt." *Id.* (quoting *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)). Specific has been interpreted as "explicit," or "relating to a particular named thing." *Id.* A prima facia case refers to "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004)).

We review de novo a trial court's ruling on a TCPA motion to dismiss. *Buckingham Senior Living Cmty., Inc. v. Washington*, 605 S.W.3d 800, 807 (Tex. App.—Houston [1st Dist.] 2020, no pet.). We also review de novo "whether a nonmovant has presented clear and specific evidence establishing a prima facie case for each essential element of the challenged claims." *Landry's, Inc. v. Animal Legal Def. Fund*,

8

No. 19-0036, 2021 WL 2021130, at *2 (Tex. May 21, 2021) (quoting *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.)). We consider evidence favorable to Vu and Dong in determining whether they met their burden of establishing a prima facie case under the TCPA. *See Buckingham Senior Living Cmty., Inc.*, 605 S.W.3d at 808.

## B. Prima Facie Case for Malicious Prosecution

Vu and Dong do not dispute that Tran satisfied his initial burden to show that their legal action is subject to the TCPA. *See id.* at 807 ("When a person interacts with the police to report perceived wrongdoing, that person is exercising their right to petition, as that right is defined in the TCPA."); *see also Murphy USA, Inc. v. Rose*, No. 12-15-00197-CV, 2016 WL 5800263, at *3 (Tex. App.—Tyler Oct. 5, 2016, no pet.) (mem. op.) ("Filing a police report, whether true or false, implicates a person's right to petition the government."). Therefore, under the decisional framework set out above, the burden shifted to Vu and Dong to present clear and specific evidence establishing a prima facie case for each essential element of their claim of malicious prosecution. *See Creative Oil & Gas, LLC*, 591 S.W.3d at 132. Both in their response to the motion to dismiss and in their appellate brief, Vu and Dong assert that they met their burden. In deciding whether they did, we first look at what is required to establish a claim of malicious prosecution.

Malicious prosecution claims exist to protect those unnecessarily subjected to criminal proceedings. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792 (Tex.

9

2006). However, this goal must be offset by public policy considerations that encourage citizens to report crimes that are real or perceived. *Id.* The essential elements of a malicious prosecution claim are (1) the commencement of a criminal prosecution against the plaintiff, (2) causation of the action by the defendant, (3) termination of the prosecution in the plaintiff's favor, (4) the plaintiff's innocence, (5) the absence of probable cause for the proceedings, (6) malice in filing the charge, and (7) damage to the plaintiff. *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997). "Claims for malicious prosecution create a tension between the societal interest in punishing crimes and the individual interest in protection from unjustifiable criminal prosecution; we are therefore constrained to the exact prerequisites for liability when reviewing such claims." *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 533 (Tex. App.—Fort Worth 2009, pet. denied).

The probable-cause element of a malicious prosecution claim asks whether a reasonable person would believe under the circumstances that a crime had been committed before criminal proceedings were instituted. *Kroger Tex. Ltd. P'ship*, 216 S.W.3d at 792–93. Likewise, the element of malice aids in protecting defendants by negating the natural tendencies of a jury to punish those who, through error but not malevolence, commence criminal proceedings against an individual who is ultimately exonerated. *Id.* at 792. And courts are to presume that the defendant acted in a reasonable manner with probable cause to initiate criminal proceedings. *Id.* at 793.

**C. Application of Facts to Malicious Prosecution Elements**

In their second issue, which we address first, Vu and Dong argue that they established by clear and specific evidence each essential element of their malicious prosecution claim. Tran responds that Vu and Dong cannot meet their burden of establishing elements (2), (4), (5), and (6) by clear and specific evidence. We conclude that, regardless of whether Vu and Dong met their burden with respect to the other elements,[2] they did not meet their burden with respect to the second (causation of the action by the defendant) and fifth (absence of probable cause) elements. *See Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017).

**1. Element (2): Causation of the Action by the Defendant**

The second element of a malicious prosecution claim is the causation of the action by the defendant. *See Richey*, 952 S.W.2d at 517. In determining causation, it must be determined whether the defendant either "initiated" or "procured" criminal proceedings, depending on the nature of the case. *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 293 (Tex. 1994). A person initiates a criminal prosecution if he makes a formal charge to law enforcement authorities but procures one if his actions are enough to cause the prosecution, and but for his actions, the prosecution would not have occurred. *Id.* at 292.

---

[2]While the failure of only one element defeats the malicious prosecution claim, *see Digby v. Tex. Bank*, 943 S.W.2d 914, 919 (Tex. App.—El Paso 1997, writ denied), we will briefly address all of the elements that were challenged before the trial court and on appeal.

When the decision to prosecute is left to another's discretion, such as a law enforcement official or grand jury, a person cannot be said to have procured, or caused, the criminal prosecution unless the person knowingly provided materially false information to the decision maker. *King v. Graham*, 126 S.W.3d 75, 78 (Tex. 2003); *Reed v. Cleveland*, No. 09-19-00136-CV, 2020 WL 6600968, at *6 (Tex. App.— Beaumont Nov. 12, 2020, no pet.) (mem. op.). In this context, false information is not material "[i]f the decision to prosecute would have been made with or without the false information." *King*, 126 S.W.3d at 78. The plaintiff thus has the burden of proving that the decision to prosecute would not have been made "but for" the false information supplied by the defendant. *Id.* Causation cannot be inferred solely from the falsity of statements except possibly when the only information the decision maker relied on to prosecute was false. *Reed*, 2020 WL 6600968, at *6 (citing *King*, 126 S.W.3d at 79).

Vu and Dong argue that Tran initiated and caused the criminal prosecution against them for burglary of the Premises by making the report to the police. Further, they complain that Tran did not tell the police about Vu's business partnership or that Vu was a tenant on the Premises. They offer the lease as proof that Vu had authority to access the Premises and the business-formation documents as proof of the ongoing business relationship between Vu and Tran.

13

However, Tran did not assert a burglary[3] charge against Vu and Dong, and the record is clear that the Arlington Police Department considered evidence other than Tran's communications with them. *Lermon v. Minyard Food Stores, Inc.*, No. 05-13-00034-CV, 2014 WL 6466840, at \*5 (Tex. App.—Dallas Nov. 19, 2014, pet. denied) (mem. op.). With regard to the criminal charges filed against Vu and Dong, the Arlington Police Department's "Incident Information" report does not mention burglary, but rather states that the nature of Tran's phone call to police was "criminal mischief" and "theft of property." Moreover, the arrest-warrant affidavit reflects that photographs, audio recordings, and witnesses in addition to Tran were relied upon by the affiant, a police officer, to obtain the warrant. *See Reed*, 2020 WL 6600968, at \*7 ("However, even if the information Appellants point to was false, this was not the only information police had."); *see also Cal. Commercial Inv. Grp., Inc. v. Herrington*, No. 05-19-008050CV, 2020 WL 3820907, at \*6 (Tex. App.—Dallas July 8, 2020, no pet.) (mem. op.) (discussing how additional evidence can negate initiation or procurement by a defendant); *Weaver v. Bell*, No. 03-04-00169-CV, 2005 WL 1364046, at \*6 (Tex. App.—Austin June 10, 2005, no pet.) (mem. op.) ("The evidence shows

---

[3]Theft requires only the unlawful appropriation of property with intent to deprive the owner of it, Tex. Penal Code Ann. § 31.03(a), while burglary, as alleged here to the grand jury, requires entry into a building not then open to the public—without the owner's effective consent—with the intent to commit theft, *id.* § 30.02(a)(1).

that the police investigated and interviewed other witnesses before deciding to arrest Weaver and that the decision was not based solely on Bell's statement to the police.").

In fact, one of those witnesses—Nguyen—stated that on December 18, 2018, she was in her office on the Premises when Vu entered and she "was immediately suspicious of [Vu's] presence on the Premises because [she] had not seen [Vu] on the Premises in some time and it was [her] understanding that [Vu] was no longer associated with Remco and RX-Direct and was not supposed to be on the Premises." Nguyen reported that even after being confronted by building management, Vu later returned with his wife, Dong, and "proceeded to search for and remove certain business records from the Premises." Nguyen later met with Arlington law enforcement officers at the Premises to discuss what had occurred. In her words, "The law enforcement officers were able to observe the damage that had occurred from the thrashing of the office door handles. I provided law enforcement with the audio-recording I made during the thrashing of the office door handles." In their pleadings and affidavits, neither Vu nor Dong disputes, much less denies, the "thrashing of the door handles" and the damage to the property.

With this additional evidence, even assuming that Tran knowingly provided false information to the police detective, there is no proof in the record that that false information was all the prosecutor relied upon to initiate the criminal charges. *See Weaver*, 2005 WL 1364046, at *6. Likewise, Vu and Dong have presented no evidence that "but for" the false information provided by Tran, the decision to prosecute

15

would not have been made. *See King*, 126 S.W.3d at 76 (noting that there was no evidence that the district attorney would have decided not to prosecute but for the allegedly false information). Therefore, we cannot conclude that Tran "caused" Vu and Dong to be prosecuted, and their burden of proof regarding element number two for malicious prosecution fails.

### 2. Element (5): Lack of Probable Cause to Initiate or Procure the Prosecution

The fifth element of a malicious prosecution claim is that there was no probable cause to initiate or procure the prosecution. *See Richey*, 952 S.W.2d at 517. The probable-cause element asks whether a reasonable person would believe under the circumstances that a crime had been committed before criminal proceedings were instituted. *Id.* Probable cause is measured at the time of the defendant's report to the authorities and not later when the case is investigated. *Herrington*, 2020 WL 3820907, at *7. Moreover, "[w]hen a complainant reasonably believes a crime has occurred, the reasonableness of that belief is not negated by the failure to fully disclose all relevant facts to the officer." *Richey,* 952 S.W.2d at 519. "There is an initial presumption in malicious prosecution actions that the defendant acted reasonably and in good faith and had probable cause to initiate the proceedings." *Id.* at 517. "A malicious prosecution plaintiff carries the burden of *disproving* probable cause." *Pettit v. Maxwell*, 509 S.W.3d 542, 547 (Tex. App.—El Paso 2016, no pet.).

16

In support of this element, Vu and Dong offered evidence of Vu's signature on the lease agreement for the Premises, Vu's tenancy of the Premises, and the Certificate of Formation of Medical RX (reflecting that Vu was a Managing Member of the company) as proof of absence of probable cause for the proceedings. According to Vu and Dong's response to the motion to dismiss, "[t]here was no conceivable interpretation of the facts from [Tran's] perspective—at the time that he made a report to the Arlington Police Department—that would have given him the reasonable belief that Vu had no authority to access the Leased Premises, no authority to access company documents, or no authority to give consent for Dong to access the Leased Premises." Therefore, they contended that Tran lacked probable cause "to honestly and reasonably believe" that they committed a crime.

In response, Tran argued that Vu and Dong "did not specifically plead facts, and cannot possibly present clear and specific evidence showing, that [Tran] did not reasonably believe a crime had been committed." Tran also argues on appeal that to conclude that he did not have probable cause to report a crime "would require the Court to find that a business manager does not have probable cause to contact police after receiving telephone calls from frightened employees witnessing a meat cleaver (or a knife or a gun for that matter) being used in an aggressive manner on the business premises." In addition, Tran contends that the crime ultimately charged is different from the crimes he reported; thus, because probable cause and the reasonableness of the defendant is meant to be analyzed at the time of the accusation,

17

to assess that element in light of burglary, rather than mere theft or criminal mischief, would be improper. *Buckingham Senior Living Cmty., Inc.*, 605 S.W.3d at 811. Finally, he argues that Vu and Dong's burden cannot be met by the subsequent grand-jury no-bill of the burglary charge.

We agree that the subsequent no-bill of the burglary charge is not dispositive of the lack-of-probable-cause element. Rather, the probable-cause element "focuses on whether, at the time of the accusation, a reasonable person would believe that a crime had been committed." *Id.* (citing *Richey*, 952 S.W.2d at 517). It is not met by evidence of a subsequent resolution of the criminal charges. *Id.* Even an acquittal does not prove that there was no probable cause, just as an arrest does not prove guilt. *Kroger Tex. Ltd. P'ship*, 216 S.W.3d at 794.

The law presumes an accuser honestly and reasonably acted on the basis of observations in reporting a suspect to the police. *Buckingham Senior Living Cmty., Inc.,* 605 S.W.3d at 811. To rebut this probable-cause presumption, Vu and Dong had to produce prima facie evidence that Tran procured the prosecution on the basis of information or motives that do not support a reasonable belief that Vu and Dong were guilty of a crime. *Id.* They failed to do this for two reasons.

First, as noted above, probable cause is focused on a reasonable belief that a crime has been committed at the time of reporting. Given that Tran was away from the office when his employee, Nguyen, called him because she was "upset and frightened" that Vu had disconnected the video camera at the Premises, attempted to

18

gain access to Tran's and his wife's offices, used a meat cleaver from the kitchen to repeatedly "thrash" and damage the door handles to the offices, and returned with Dong and removed "unknown business records" from the Premises, there was adequate concern to warrant calling the police. Moreover, Vu and Dong do not dispute that a meat cleaver was used on a door within the business, that damage was caused to the Premises, and that documents were taken from the Premises. *See Kroger Tex. Ltd. P'ship*, 216 S.W.3d at 794–95 (discussing the requirements of reasonable motives, grounds, or beliefs that a crime was committed).

Second, although "failing to fully and fairly disclose all material information and knowingly providing false information to the prosecutor are relevant to the malice and causation elements of a malicious prosecution claim[, they] have no bearing on probable cause." *Richey*, 952 S.W.2d at 519. The probable-cause inquiry is concerned only with whether the complainant reasonably believed that the elements of a crime had been committed based on the information available to the complainant before criminal proceedings began. *Id.* In making this determination, it is important to note that the crimes reported by Tran were criminal mischief and theft of property, not burglary. In their affidavits filed in response to the TCPA motion to dismiss, Vu and Dong do not deny causing the property damage or being accused of theft or embezzlement. Moreover, they fail to show why damage to the Premises with a meat cleaver and removal of the documents from the Premises did not demonstrate probable cause to initiate or procure prosecution for criminal mischief or theft of

19

property. *See id.* They therefore failed to prove the fifth element[4] of their malicious prosecution claim, and accordingly, their second issue is overruled.

## D. Granting of Tran's TCPA Motion to Dismiss

In their first issue, Vu and Dong argue generally that the trial court erred by granting Tran's TCPA motion to dismiss. They provide no separate argument on this issue, but instead combine it with their second issue. We do the same here.

---

[4]Tran also argues that Vu and Dong failed to meet elements (4) (plaintiff's innocence) and (6) (malice in filing the charge). With regard to element (4), the plaintiff must prove that he is innocent of the crime charged. *Kroger Tex. Ltd. P'ship*, 216 S.W.3d at 795. In support of this element, Vu and Dong contend that Vu's part ownership of Medical RX, his tenancy of the Premises, and the permission received by Dong from Vu to enter the Premises establish their innocence. In response, Tran argues that the no-bill for burglary is inadequate as proof of innocence overall and that Vu and Dong did not attempt to dispute the claims of criminal mischief by taking a meat cleaver to two office doors and theft of property by removing business records from the Premises.

With regard to element (6), malice can be defined as "ill will, evil motive, or reckless disregard of the rights of others." *Herrington*, 2020 WL 3820907, at *7. Some courts claim that a plaintiff need only prove that the defendant committed a reckless disregard of another's right with indifference as to the potential injuries that may result. *Tranum v. Broadway*, 283 S.W.3d 403, 417 (Tex. App.—Waco 2008, pet. denied). That reckless disregard can be evaluated in part by the extent of the disclosure to the prosecutor or if such disclosure is met with knowingly false information which in turn causes the prosecution. *Richey*, 952 S.W.2d at 519. In support of this element, Vu and Dong claim that an email exchange regarding a potential buyout of ownership equity between Vu and Tran that occurred two days prior to the reported crimes supports their claim of malice. They also once again point to the withholding of information by Tran regarding Vu's ownership and tenancy status. Tran responds that this information does not demonstrate clear and specific evidence of malice when filing the police report. *See Herrington*, 2020 WL 3820907, at *7 (discussing how a claim of malice without further evidence of how such a claim demonstrates malice is insufficient.).

As set out above, the granting of the motion to dismiss was proper because the failure of only one malicious prosecution element is required for affirmation of the trial court's order. *See Digby*, 943 S.W.2d at 919 ("The failure of a plaintiff to prove any one of the [ ] elements is fatal to his case."). Here, Vu and Dong failed to prove at least two elements contested by Tran. Thus, even if viewed in the light most favorable to the nonmovant, the claim for malicious prosecution fails, and the granting of Tran's TCPA motion to dismiss was proper. The first issue raised by Vu and Dong is overruled.

## IV. CONCLUSION

Having overruled both of Vu and Dong's issues, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: August 19, 2021