**Affirmed in Part, Reversed in Part, and Remanded; and Opinion filed September 1, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00085-CV

---

## SAKS & COMPANY, LLC, JENNIFER WELCH, JUAN DOMINGUEZ, AND ANDREW BALOGH, Appellants

### V.

### YA XI LI, Appellee

---

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2020-53894**

---

## OPINION

Appellee Ya Xi Li sued her former employer, appellant Saks & Company, LLC, and other employees (appellants Jennifer Welch, Juan Dominguez, and Andrew Balogh) for malicious prosecution and defamation. Appellants filed a motion to dismiss these claims under the Texas Citizen's Participation Act

(TCPA),[1] and the trial court denied it. They challenge the trial court's ruling in this interlocutory appeal. We affirm the trial court's order in part, reverse it in part, and remand for further proceedings.

## I. TCPA PROCEDURES

The TCPA was designed to protect a defendant's rights of speech, petition, and association while protecting a claimant's right to pursue valid legal claims for injuries caused by the defendant. *Montelongo v. Abrea*, 622 S.W.3d 290, 295 (Tex. 2021) (citing Tex. Civ. Prac. & Rem. Code § 27.002). To accomplish this objective, the TCPA provides for a multi-step process for the dismissal of a legal action to which it applies. *See id.* First, the movant must demonstrate that the legal action is "based on or is in response to" the movant's exercise of the right of free speech, petition, or association. *Id.* If the movant meets this burden, the claimant may avoid dismissal by establishing by clear and specific evidence a prima facie case for each essential element of the claim in question. *Id.* Under this standard, the claimant must provide enough detail to show the factual basis for their claim. *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding).

An "exercise of the right to petition" means, among other things, (1) a communication pertaining to an official proceeding to administer the law, or (2) a communication that is reasonably likely to encourage consideration or review of an issue by a judicial or other governmental body. Tex. Civ. Prac. & Rem. Code § 27.001(4)(A)(ii), (C). An "exercise of the right of free speech" means a communication made in connection with a matter of public concern. *Id.* § 27.001(3). A "matter of public concern" includes a statement or activity

---

[1] *See* Tex. Civ. Prac. & Rem. Code ch. 27; *see also In re Lipsky*, 460 S.W.3d 579, 584 & n.1 (Tex. 2015).

regarding "a matter of political, social, or other interest to the community" or "a subject of concern to the public." *Id.* § 27.001(7).

We review de novo whether the parties have met their respective burdens. *See M.A. Mills, P.C. v. Kotts*, 640 S.W.3d 323, 326 (Tex. App.—Houston [14th Dist.] 2022, pet. filed). We view the pleadings and the evidence in the light most favorable to the claimant, favoring the conclusion that their claims are not predicated on a protected expression. *See Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 29 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Sanchez v. Striever*, 614 S.W.3d 233, 246 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

## II.   PLEADINGS AND EVIDENCE

Li sued appellants for malicious prosecution, false imprisonment, defamation, negligence, and gross negligence. She alleged that she was a cosmetics salesperson at a Saks department store. Regarding her malicious prosecution claim, she alleged that appellants accused her of committing aggregate felony theft, and Li was arrested based on appellants' accusation. The basis for the theft accusation was that Li made sales to customers who used other peoples' credit cards. Regarding her defamation claim, she alleged that Saks, Dominguez, and Balogh "made false, defamatory statements accusing [Li] of a crime—namely theft—and published the false statements to third parties including police officers, other employees who were not directly involved in the investigation, and [Li's] friends."

Appellants filed a motion to dismiss under the TCPA, arguing that Li's claims were based on appellants' exercise of the right to petition. Appellants argued that they established the affirmative defense of truth for Li's defamation claim, attaching as an exhibit Li's "confession" to the alleged offense. In the statement handwritten by Welch or Dominguez, but signed by Li, she admitted to

3

ringing up several transactions for customers who purportedly used their "friend's" accounts and had other people pick up the orders. The statement provides, "I knew that the Saks account numbers used did not belong to the customers I was talking to," and, "I knew that this was wrong and I know this caused an additional loss to the company."

Li filed an amended petition in which she altered the basis for her defamation claim. Instead of complaining about statements made to the police or other employees, Li alleged that Saks, Dominguez, and Balogh "through Dominguez, made false, defamatory statements accusing [Li] of a crime—namely theft—and published the false statements to a third party who was [Li's] acquaintance."

Li filed a response to appellant's motion to dismiss, attaching declarations from herself, her friend, and her criminal defense attorney. In her declaration, Li testified that she was a lawful permanent resident from China and was hired by Saks "because I was Chinese and I spoke Chinese and had access to lots of wealthy Chinese customers." She testified that Saks "gave me permission and encouraged me to promote Saks merchandise on a Chinese app called WeChat that is very much like Facebook." Li sold millions of dollars' worth of different products for Saks during her two and a half years' employment at the department store.

In April 2019, Welch and Dominguez were employed by Saks as loss prevention officers. They had been investigating some bad credit card transactions involving Li's customers when they called Li to an office and interrogated her for hours without allowing her to leave or use the bathroom. Li testified that she does not speak English well and does not understand complicated words in English. She could not communicate in English well enough to explain things to Welch and Dominguez as they accused her of being a thief. Welch and Dominguez "knew

4

[Li] could not understand good or explain things well to them and took advantage of it." They wrote out the purported confession in English and made Li sign it. Li did not understand what it said and felt she could not go home or keep her job if she did not sign it. She testified that she did not accept credit card payments that she knew were unauthorized.

The store manager, Balogh, read the statement and authorized Welch and Dominguez to seek Li's arrest. Li was arrested at the store and held for three days in a Harris County jail. Li's criminal defense attorney testified that a criminal complaint alleged that Li unlawfully appropriated various items of merchandise from Welch, i.e., Saks, with the intent to deprive Welch of the property. Ultimately, a grand jury no-billed the case, and the charge was dismissed.

Li testified that that credit card transactions that formed the basis of her arrest for theft "had to be approved through Saks' credit department," and Saks "approved each transaction that Saks accused me of doing something wrong with." Li "followed the procedures that Saks told me to follow." She testified that Welch and Dominguez never told the police that the credit department authorized the transactions that Li did for the customers who participated in the alleged theft. Welch and Dominguez "never told police that I ran those transactions by the Saks credit department for approval." Li's attorney testified that Li's lack of intent to steal merchandize was shown by the fact that Li was required to "get approval from the credit department for all in-store purchases over $1,000" and that Li "complied with company policy before each transaction and did not make any attempt to subvert or hide what she was doing." Moreover, Welch and Dominguez never told the police that "Saks encouraged employees to use WeChat."

Li testified that when she was being detained at the Saks store, Welch and Dominguez took Li's briefcase that contained $150 in cash, which belonged to Li's

5

friend. Li and the friend testified similarly that when the friend went to Saks to get the money, Dominguez told the friend that Dominguez "didn't see any money" and that "the money was stolen by [Li]."

At the hearing on appellants' motion, appellants additionally contended that the TCPA applied to Li's amended defamation claim because it related to a matter of public concern.

The trial court denied the motion without specifying its reasons.

### III. TIMELINESS

As an initial matter, Li contends that the trial court's order may be upheld for Saks and Welch because they did not file their motion to dismiss timely under the TCPA.

A motion to dismiss under the TCPA "must be filed not later than the 60th day after the date of service of the legal action." Tex. Civ. Prac. & Rem. Code § 27.003(b). The parties, "under mutual agreement, may extend the time to file a motion." *Id.* And, the court "may extend the time to file a motion under this section on a showing of good cause." *Id.* Although the statute does not define "good cause," at least one court has noted that good cause may be established by showing that "the failure involved was an accident or mistake, not intentional or the result of conscious indifference." *Sullo v. Kubosh*, 616 S.W.3d 869, 900 n.1 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (quoting *Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005) (per curiam)).

Saks and Welch filed their motion to dismiss on November 30, 2020. Li adduced evidence that Saks and Welch were served on September 16 and September 8, 2020, respectively—more than sixty days before they filed their motion. However, Li also adduced evidence that the parties signed a Rule 11

agreement whereby the defendants agreed to "accept service of Plaintiff's Original Petition" on October 1, 2020.

Saks and Welch argued to the trial court and to this court that the Rule 11 agreement set the date of service as October 1, so their November 30 motion was filed timely within sixty days of service. They contend in the alternative that they established good cause for a late filing by relying on the date of service stated in the Rule 11 agreement. Yi makes no argument regarding Saks and Welch's good cause.

Even if the Rule 11 agreement in this case did not set the date of service for purposes of the TCPA,[2] Saks and Welch's reliance on the date of the Rule 11 agreement in filing their motion to dismiss establishes good cause because their failure to file the motion a few weeks earlier was the result of a mistake and not conscious indifference. *Compare Sullo*, 616 S.W.3d at 902 (no good cause when the movants filed their TCPA motion "years after they were served with a legal action setting out the only causes of action that have been asserted against them" and after they had filed dispositive summary judgment motions on those causes of action), *with Boulet v. State*, 189 S.W.3d 833, 837–38 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (good cause established when attorney mis-calendared deadline to respond to request for admissions and the attorney delivered the response on the perceived deadline).

The trial court's ruling on Saks and Welch's motion cannot be upheld on this basis.

---

[2] Li agrees that Dominguez was served on the date of the Rule 11 agreement because that is when Dominguez "agreed to accept service," but also contends that the Rule 11 agreement was "ineffective to reset the dates for Saks and Welch because it is unsworn." *See* Tex. R. Civ. P. 119 (stating that a defendant may accept service of process through an attorney by a "written memorandum . . . sworn to before a proper officer").

## IV.    MALICIOUS PROSECUTION

Regarding Li's malicious prosecution claim, appellants first contend that the TCPA applies because the claim is based on or in response to their exercise of the right to petition.  Li does not dispute this contention, and we agree with appellants that Li's claims are based on or in response to appellants' communications reasonably likely to encourage consideration or review of an issue by a judicial or other governmental body.  *See* Tex. Civ. Prac. & Rem. Code § 27.001(4)(C); *see also Ford v. Bland*, No. 14-15-00828-CV, 2016 WL 7323309, at *1 (Tex. App.—Houston [14th Dist.] Dec. 15, 2016, no pet.) (mem. op.) ("Statements to police regarding incidences of perceived wrongdoing are protected by the TCPA."); *accord Buckingham Senior Living Cmty., Inc. v. Washington*, 605 S.W.3d 800, 807 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *Murphy USA, Inc. v. Rose*, No. 12-15-00197-CV, 2016 WL 5800263, at *3–4 (Tex. App.—Tyler Oct. 5, 2016, no pet.) (mem. op.).

We turn to the second step of the TCPA analysis.  As part of her burden to produce clear and specific evidence of a prima facie case for each essential element of the malicious prosecution claim, Li had to prove among other things that appellants (1) lacked probable cause; and (2) harbored malice toward her.  *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792–93 (Tex. 2006).  Appellants contend that Li has failed to meet her burden to prove these two elements.  We address only the probable cause element because it is dispositive.

The probable cause element asks "whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted."  *Id.* (quoting *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997)).  Courts presume that a complainant acted reasonably and had

probable cause to initiate criminal proceedings. *Id.* at 793. "To rebut this presumption, the plaintiff must produce evidence that the motives, grounds, beliefs, or other information upon which the [complainant] acted did not constitute probable cause." *Id.* The complainant's "failure to make a further investigation into the suspect's state of mind does not constitute lack of probable cause if all objective elements of a crime reasonably appear to have been completed." *Richey*, 952 S.W.2d at 518. In other words, the complainant has no duty to inquire of the suspect whether they have some alibi or explanation for their conduct. *Id.*

A person commits the offense of theft if the person unlawfully appropriates property with intent to deprive the owner of the property. Tex. Penal Code. § 31.03(a). "Appropriate" means to acquire or otherwise exercise control over property. *Id.* § 31.01(4)(B). Appropriation is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1). Consent is not effective if it is induced by deception. *Id.* § 31.01(3)(A). A person may be held criminally responsible for the conduct of another if, acting with intent to promote or assist the commission of the offense, the person solicits, encourages, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2).

Under these standards, Li had the burden to respond to appellants' motion with clear and specific evidence showing that appellants acted on motives, grounds, beliefs, or other information such that a reasonable person would not have believed Li committed theft.

Here, appellants knew that Li had facilitated fraudulent sales and admitted that she "knew that this was wrong." None of Li's evidence rebuts the presumption that appellants reasonably believed Li had committed theft. Li suggests that appellants "drew an unsupported assumption that the credit account holder had not authorized the caller to use their credit account." But these

9

transactions were deemed fraudulent and resulted in a loss to Saks; no evidence undermines appellants' belief that the account holders did not authorize the transactions. Li also contends that appellants knew that the "credit department" authorized the transactions, but she adduced no evidence of any appellants' *knowledge* of this fact—she testified only that Welch and Dominguez failed to inform the police about this fact.

Li points to other evidence purportedly undermining her intent to commit a theft: the coercive nature of the interrogation, her poor understanding of the English language, her "model employment history," and her attorney's opinion testimony. None of this evidence undermines appellants' reasonable belief that Li unlawfully appropriated Saks' property with an intent to deprive Saks of the property. *See Suberu*, 216 S.W.3d at 794 (plaintiff's testimony that she didn't have a cart when leaving the store did not undermine employees' reasonable beliefs that the plaintiff was trying to leave the store with a cart of items); *Richey*, 952 S.W.2d at 518 (reasoning that the defendant could presume the plaintiff's intent to steal based on his conduct of leaving the store without paying for an item concealed in his possession); *Cash Am. Pawn, LP v. Alonzo*, No. 01-19-00801-CV, 2021 WL 4155795, at *1–2, *7–8 (Tex. App.—Houston [1st Dist.] Sept. 14, 2021, no pet.) (mem. op.) (reasoning that the defendant–employer could reasonably believe that the plaintiff–employee committed theft when the plaintiff executed loans to another employee that were well above the resale value of the collateral, even though no money or property left the store). Similarly, Welch and Dominguez's failure to disclose to the police that Saks encouraged Li to use WeChat or that the Saks credit department had approved the transactions does not rebut the presumption of probable cause. *See Richey*, 952 S.W.2d at 519 (reasoning that a defendant's "failing to fully and fairly disclose all material information and

knowingly providing false information to the prosecutor . . . have no bearing on probable cause").

In sum, Li failed to meet her burden in response to the TCPA motion to produce evidence showing that a reasonable person in appellants' position would not have believed Li committed theft because Li did not adduce any evidence concerning the "motives, grounds, beliefs, or other information upon which [appellants] acted" that would not amount to probable cause. *Suberu*, 216 S.W.3d at 793–94.

The trial court erred by not dismissing Li's malicious prosecution claim under the TCPA.

## V. DEFAMATION

Appellants challenge the trial court's denial of their TCPA motion as it relates to the defamation claim in Li's original petition (based on an allegation of theft made to police and other employees) and the defamation claim in her amended petition (based on an allegation of theft made to Li's friend).

The elements of defamation include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) made with the requisite degree of fault, and (4) damages in some cases. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (orig. proceeding). Generally, the status of the plaintiff determines the requisite degree of fault, and a private individual need only prove negligence. *See id.* But even a private individual must prove actual malice if the circumstances support the application of a qualified privilege. *Steinhaus v. Beachside Env't, LLC*, 590 S.W.3d 672, 677 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). "Actual malice" means that the statement was made with

11

knowledge of its falsity or with reckless disregard for its truth. *In re Lipsky*, 460 S.W.3d at 593.

## A. Original Petition Defamation Claim

Appellants contend that the TCPA applies to Li's original defamation claim and that Li failed to produce clear and specific evidence of each essential element of her claim—in particular, proof of actual malice because a qualified privilege applies. We agree with appellants.

### 1. *Survival of TCPA Motion Following Amendment of Petition*

As an initial matter, Li contends that appellants "improperly challenge the trial court's order pertaining to Li's defamation claim with respect to statements made to the police and employees" because "Li chose not to advance" this claim in her amended petition. Li contends that appellant's argument is "misplaced" because Li's amended petition took the place of her original petition.

"A party's decision to nonsuit does not affect a nonmoving party's independent claims for affirmative relief, including motions for dismissal under the TCPA." *Abatecola v. 2 Savages Concrete Plumbing, LLC*, No. 14-17-00678-CV. 2018 WL 3118601, at *13 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.). "TCPA motions to dismiss survive nonsuit because, unlike a nonsuit, the TCPA motion to dismiss might also allow the movant to obtain a dismissal with prejudice, attorney's fees, and sanctions." *Id.* at *14. Thus, we must consider Li's defamation claim as pleaded at the time appellants filed their TCPA motion. *See Reeves v. Harbor Am. Cent., Inc.*, 631 S.W.3d 299, 308 n.7 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

12

## 2. *Claim Based on or in Response to Right to Petition*

As with the malicious prosecution claim, appellants contend that Li's original defamation claim was based on or in response to Saks's, Dominguez's, and Balogh's exercise of the right to petition. Li does not dispute this contention. We agree with appellants that the statements to police and others about Li's alleged theft from Saks were communications pertaining to an official proceeding to administer the law or were reasonably likely to encourage consideration or review of an issue by a judicial or other governmental body. *See* Tex. Civ. Prac. & Rem. Code § 27.001(4)(A)(ii), (C); *see also Ford v. Bland*, No. 14-15-00828-CV, 2016 WL 7323309, at \*1 (Tex. App.—Houston [14th Dist.] Dec. 15, 2016, no pet.) (mem. op.) (defamation claim based on statements to police were based on, related to, or in response to exercise of right to petition).

## 3. *Qualified Privilege and No Evidence of Actual Malice*

Appellants contend that Saks's, Dominguez's and Balogh's statements to police and any other employees were qualifiedly privileged, and thus, Li had the burden to adduce clear and specific evidence that these appellants made their defamatory statements with actual malice. In her briefing, Li does not dispute the applicability of the privilege and "assumes that Saks, Dominguez, and Balogh had a qualified privilege."

A qualified privilege—sometimes called a "conditional" privilege—arises out of the occasion upon which the false statement is published. *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015). Circumstances that may give rise to a qualified privilege include those that induce a belief that the publication protects the publisher's interest. *See Granada Biosciences, Inc. v. Forbes, Inc.*, 49 S.W.3d 610, 619 (Tex. App.—Houston [14th Dist.] 2001), *rev'd on other grounds, Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167 (Tex. 2003); *see also Cain v.*

13

*Hearst Corp.*, 878 S.W.2d 577, 582 (Tex. 1994) (qualified privilege exists when the speaker has "an interest that is sufficiently affected by the communication"). Generally, "an employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing." *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). Another circumstance generally giving rise to a qualified privilege is "when a person makes a statement to police identifying someone as a potential suspect in the commission of a criminal offense." *Pease v. Bembry*, No. 03-02-00640-CV, 2004 WL 1574243, at \*2 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.); *accord Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 610 (Tex. App.—San Antonio 2018, pet. denied).

Here, appellants established that Saks's, Dominguez's, and Balogh's statements concerning Li's alleged theft from Saks were qualifiedly privileged. *See Randalls*, 891 S.W.2d at 646; *Pease*, 2004 WL 1574243, at \*2. Thus, it became Li's burden to establish by clear and specific evidence that these appellants made the statements with actual malice—with knowledge of falsity or reckless disregard for the truth. *See Steinhaus*, 590 S.W.3d at 677–78.

Li points to evidence showing that she did not write the confession, did not understand it, and only signed it after a coercive interrogation by Welch and Dominguez. She again points to evidence that she "got approval for the alleged fraudulent transactions from Saks' credit department," that she was a successful employee, and that she was encouraged by Saks to use WeChat to sell Saks's merchandise. But, none of this evidence shows that Saks, Dominguez, and Balogh spoke with knowledge of falsity or reckless disregard for the truth when they communicated with the police or other employees. At the time they made their statements, they knew that Li had facilitated fraudulent transactions by allowing

14

customers to use credit cards belonging to other people and that Li admitted, "I knew that this was wrong."

Although Li's evidence tends to prove the falsity of these appellants' statements, the falsity of the statements does not prove actual malice. *See id.* at 679. These appellants' failures to investigate the facts more fully before referring the matter to the police is not evidence of actual malice. *See Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002). Li's evidence does not show that these appellants purposefully avoided the truth or that their assertions were inherently improbable and made on information that was obviously dubious. *See id.*; *cf. Steinhaus*, 590 S.W.3d at 679 (reasoning that the plaintiff's self-serving denial of improper activity made to the defendant did not show that the defendant spoke with knowledge of falsity or reckless disregard for the truth (citing *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 427 (Tex. 2000))). At most, Li's evidence shows that these appellants misinterpreted ambiguous facts, which does not show actual malice. *See Bentley*, 94 S.W.3d at 596.

Accordingly, the trial court erred by not dismissing Li's original defamation claim under the TCPA.

## B.   Amended Petition Claim

Appellants contend that the TCPA applies to Li's amended defamation claim because it "concerned Dominguez's right to speak regarding an issue of public concern—i.e., Li's alleged commission of a crime." As shown by Li's amended petition and evidence, the basis for this claim was Dominguez's communication to Li's friend that Li stole $150 from Li's friend

To determine whether speech relates to a matter of public concern, courts consider the content, form, and context of the speech. *Brady v. Klentzman*, 515

S.W.3d 878, 884 (Tex. 2017); *Moore v. Reed*, No. 14-20-00463-CV, 2022 WL 1180116, at *2 (Tex. App.—Houston [14th Dist.] Apr. 21, 2022, no pet.) (mem. op.). Yet, appellants appear to argue that any statement about the commission of a crime is about a matter of public concern, citing *Brady*, 515 S.W.3d at 884. This proposition is dubious.

In *Brady*, the Supreme Court of Texas noted, "Public matters include, among other things, 'commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions.'" *Id.* (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975)). *Brady* involved statements by a reporter made in a newspaper article about how a chief of police intimidated officers who ticketed the plaintiff, i.e., the chief's son. *Id.* The supreme court held that the article was about a matter of public concern because there was a paramount public interest in a free flow of information to the people concerning public officials such as the chief of police. *Id.* The court did not end the inquiry at the mere fact that the article was about the plaintiff's commission of a crime.

The *Cox Broadcasting* case, quoted in *Brady*, prohibited the press from being sued for invasion of privacy based on reporting of judicial proceedings and information that was already in the public record—there, the name of a rape victim. *See Cox Broad.*, 420 U.S. at 492, 494–95, 498–97 ("Under these circumstances, the protection of freedom of the press provided by the First and Fourteenth Amendments bars the State[s] from making appellants' broadcast the basis of civil liability."). The Supreme Court did not end the inquiry with the fact that the subject matter of the report concerned crime.

This court took a similar approach in *Moore*, in which a candidate for political office accused her opponent of "beating his ex-wife." *See* 2022 WL 1180116, at *1. This court did not end the inquiry at the fact that the statements

16

concerned a crime but instead focused on the content, form, and context of the speech—the statements were made during a political campaign and involved a candidate's fitness for office. *See id.* at \*2 ("Based on the context of the statements, we conclude that they were made in connection with a matter of public concern.").

Appellants also rely on two decisions from our sister courts: *Kadow v. Grauerholz*, No. 02-20-00044-CV, 2021 WL 733302 (Tex. App.—Fort Worth Feb. 25, 2021, no pet.), and *Crews v. Galvan*, No. 13-19-00110-CV, 2019 WL 5076516 (Tex. App.—Corpus Christi–Edinburgh Oct. 10, 2019, no pet.) (mem. op.). *Kadow* involved a statement about the plaintiff being "under criminal investigation" for theft, fraud, misappropriation, abuse of the elderly, and kidnapping. *Kadow*, 2021 WL 733302, at \*3. *Crews* involved an allegation that a pastor had sexually assaulted a teenage girl at his prior church. *See id.* at \*2, \*4. The defendant informed the plaintiff's new church and his children's school about the allegation of sexual assault because the plaintiff was around teenage girls at these locations; the defendant expressed concern that the plaintiff might pose a danger to other young women. *See id.* at \*5 & n.5. The court held that the clergyman's sexual assault of young vulnerable people was a matter of public concern under a prior statutory definition in the TCPA[3] even though the statute of limitations had run on the allegation of sexual assault. *See id.* at \*5. The court focused on the particular allegations in the case and did "not decide whether all alleged crimes are matters of public concern in perpetuity." *Id.* at \*5.

_____

[3] The TCPA was amended in 2019 to alter the definition of "matter of public concern" so that it more closely tracks the meaning used in First Amendment jurisprudence. *See* Tex. Civ. Prac. & Rem. Code § 27.001(7)(B). *Compare* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962, *with Brady*, 515 S.W.3d at 884. *See generally Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 133–34 (Tex. 2019) (noting that the prior version of the TCPA's definition of "right of free speech" was not fully coextensive with the constitutional meaning).

An accusation that a person has committed a crime does not, standing alone, establish that the speech was on a matter of public concern. *See Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1328, 1330 (5th Cir. 1993) (statements in a press release by a party to a lawsuit against two companies, alleging that they committed theft, espionage, and piracy, was not a matter of public concern when considering the content, form, and context of the speech).

Here, the content, form, and context of Dominguez's statement do not show that his communication was made in connection with a matter of public concern. There are no allegations or evidence that the statement—that Li stole $150 from her friend—was made to anyone other than the alleged victim of the crime or published in a public forum for public consumption. Nor are there allegations or evidence that Li was under investigation by a governmental body or under indictment for stealing money from Li's friend. *Cf. Miller v. Davis*, 653 F. App'x 448, 460 (6th Cir. 2016) (although the plaintiffs' reported information "may have once been private matters, they became public upon issuance of the indictment against them"); *Kadow*, 2021 WL 733302, at *3 (allegation about plaintiff being "under investigation" for various crimes was matter of public concern). The statement concerned only what happened to Li's friend's money; the matter was not of general interest or of value or concern to the public. *Cf. Quigley v. Rosenthal*, 327 F.3d 1044, 1059–61 (10th Cir. 2003) (recognizing that although an allegation of discrimination may be a matter of public concern, here the allegation of religious and ethnic discrimination made by a non-media defendant about private parties, and not involving any concern that members of the public were likely to be harmed or discriminated against, was not a matter of public concern).

Accordingly, appellants did not meet their burden to show that the TCPA applies to Li's amended defamation claim, and the trial court did not err by denying the motion to dismiss this claim.

## VI.  CONCLUSION

The trial court erred by not dismissing with prejudice Li's claims for (1) malicious prosecution against appellants; and (2) defamation against Saks, Dominguez, and Balogh as pleaded in her original petition.  The trial court did not err by denying the motion to dismiss Li's defamation claim pleaded in her first amended petition.

Accordingly, we reverse the trial court's order denying the motion to dismiss pertaining to Li's malicious prosecution and original defamation claim.  The remainder of the trial court's order is affirmed.  We remand the case for proceedings consistent with this opinion.  *See Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 865 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Civ. Prac. & Rem. Code § 27.009.


/s/    Ken Wise
Justice


Panel consists of Justices Wise, Poissant, and Wilson.