Opinion filed August 8, 2024



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00201-CV
_____

## FS TRUCKING, INC. AND FAUSTO SOTELO, Appellants

## V.

## STACEY HARRISON, Appellee

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-23-03-0349-CV**

### M E M O R A N D U M   O P I N I O N

Appellee, Stacey Harrison, sent a series of text messages to representatives of Appellant FS Trucking, Inc., demanding that it move a rig from a drilling site; the text messages also stated that, if FS Trucking failed to act immediately, the rig would be moved from the drilling site without its consent. On the following day, an unknown person or persons moved the rig. When the Gaines County Sherriff's office questioned Harrison about his involvement in these events, he replied that he

"did what he had to do." Harrison was later indicted and arrested in connection with damages that the rig allegedly sustained during the move. He then sued FS Trucking and Appellant Fausto Sotelo, who is alleged to be the owner of FS Trucking, for malicious prosecution and intentional infliction of emotional distress.

This appeal arises out of the denial of Appellants' motion to dismiss under the Texas Citizens Participation Act (TCPA). TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2020 & Supp. 2023). Appellants contend on appeal that, in response to their motion to dismiss, Harrison failed to present clear and specific evidence in support of his causes of action for malicious prosecution and intentional infliction of emotional distress. *See id.* § 27.005(c). We reverse and remand with instructions.

## I. *Background Facts*

Harrison is a self-described "company man" for Fusselman Resources, LLC. In that capacity, he "is an authorized representative of the operator . . . who works on site, ensuring that the schedules and instructions, plans, specifications, requirements, budgets, and other project management matters are carried out in the best interests of the owner operator of a well." He is also a "37.5% working-interest owner" of wells operated by Fusselman.

On March 31, 2020, Harrison contacted Gaines County Dispatch and requested to speak with a deputy. Thereafter, he was contacted by Detective Romeo Guerrero with the Gaines County Sheriff's Office. Harrison complained to Detective Guerrero that FS Trucking "was rigged up on one of his oil wells and would not remove the rig." He then asked Detective Guerrero "what would happen if [Harrison] was to move the rig." In response, Detective Guerrero told Harrison that he could be held liable for any damages to the rig and advised that Harrison

2

should consult an attorney. Harrison then stated that he "wanted to do things right and did not want to get in trouble."

Approximately thirty minutes later, Gaines County dispatch received a call from Abel Marquez, the employee in charge of operations for FS Trucking, about the same issue. Detective Guerrero spoke with Marquez, who told him that the rig had been shut down as a result of the COVID-19 pandemic. Marquez also indicated that the rig had not been moved because Fusselman owed money to FS Trucking in connection with "services that were done to several oil wells that belonged to Fusselman." Detective Guerrero then told Marquez that he had spoken with Harrison and advised him that he could face consequences for moving the rig. Marquez responded by indicating that he had received text messages from Harrison stating that "he was going to move the rig if the rig was not moved by 5:00 pm" on March 31.

The next day, Marquez called Detective Guerrero and stated that he was on the way to the well location to confirm a report that Harrison had moved the rig. Detective Guerrero then went to the well site and, based on an interview with a person who he believed to be an employee of Fusselman, determined that the rig had been moved approximately "one quarter of a mile" away from the well site.

Marquez arrived at the well site and inspected the rig. He told Detective Guerrero that it appeared that the rig had been "hot wired," and that someone had moved the rig. Detective Guerrero also observed that cables on the rig were not properly placed, and that fresh oil was dripping on the window and the cab of the rig. Additionally, Marquez informed Detective Guerrero that "they would have to get the rig inspected because of liability issues before the rig could be placed back in service."

3

Later, Detective Guerrero interviewed Sotelo, who informed Detective Guerrero that Fusselman "owed him close to 2.8 million dollars." Pursuant to Detective Guerrero's request, FS Trucking e-mailed copies of the outstanding invoices to him.

On April 2, Detective Guerrero spoke with Harrison for a second time. Detective Guerrero asked Harrison if he had moved the rig; Harrison responded by indicating that "the rig had been removed" and that FS Trucking "had ample time to remove the rig" before it was moved. Detective Guerrero then informed Harrison that the rig had been damaged; Harrison responded by denying that there were any damages to the rig. During their conversation, Harrison refused to indicate which person or persons had moved the rig; however, he did tell Detective Guerrero "that the rig had [to] be moved and that he did what he had to do."

Following his second interview with Harrison, Detective Guerrero forwarded the matter to the Gaines County district attorney's office for review and potential prosecution. Harrison was later indicted for criminal mischief. *See* TEX. PENAL CODE ANN. § 28.03(b)(6) (West 2019). According to Harrison, the indictment alleged that he "intentionally and knowingly tamper[ed] with tangible property, namely an oil rig, by removing said oil rig from a well, without the effective consent of" the owner. Several weeks later, Harrison was arrested during a traffic stop and booked into the Andrews County jail. He posted bond and was released the same day. Eventually, the Gaines County district attorney moved for dismissal of the case pending against Harrison, and the district court granted the motion.

Harrison later filed suit against Appellants, alleging causes of action for negligence, malicious prosecution, and intentional infliction of emotional distress.[1]

---

[1]Harrison subsequently abandoned his negligence cause of action during the hearing on the motion to dismiss.

Appellants answered and filed a TCPA motion to dismiss. *See* CIV. PRAC. & REM. § 27.001–.011. Although the trial court conducted a hearing on the motion, it did not issue a ruling within thirty days following the date that the motion was heard. As a result, the motion was denied by operation of law. *Id.* §§ 27.005(a), .008(a). Appellants now appeal from the denial of their motion.[2]

## II.  *The TCPA*

In their first two issues, Appellants argue that the trial court erred in denying their TCPA motion, and that Harrison failed to establish, by clear and specific evidence, a prima facie case for each essential element of his asserted causes of action.

One purpose of the TCPA is to protect citizens from retaliatory lawsuits that are meant to intimidate or silence them on matters of public concern. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019); *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The Legislature enacted the TCPA "to safeguard 'the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law'" while, at the same time, protecting a person's right "to file meritorious lawsuits for demonstrable injury." *Kinder Morgan SACROC, LP v. Scurry Cnty.*, 622 S.W.3d 835, 847 (Tex. 2021) (quoting CIV. PRAC. & REM. § 27.002).

To effectuate this dual purpose, the TCPA employs a three-step process to determine whether a lawsuit or claim is subject to dismissal. *Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021). First, the movant must demonstrate by a preponderance of the evidence that a legal action is based on, or in response to, the movant's exercise of one of three rights protected by the statute: (1) the right of free

---

[2]An interlocutory appeal from the denial of a TCPA motion to dismiss is authorized under Section 51.014(a)(12) of the Texas Civil Practice and Remedies Code. *Id.* § 51.014(a)(12).

speech, (2) the right to petition, or (3) the right of association. Civ. Prac. & Rem. §§ 27.003(a), .005(b); *see also Montelongo*, 622 S.W.3d at 296. Next, if the movant makes this showing, the burden shifts to the nonmovant to establish by "clear and specific evidence" a prima facie case for each essential element of the claim(s) in question. Civ. Prac. & Rem. § 27.005(c); *Montelongo*, 622 S.W.3d at 296. Finally, even if the nonmovant meets that burden, the trial court is required to dismiss the legal action if the movant establishes an affirmative defense or other grounds on which the movant is entitled to judgment as a matter of law. Civ. Prac. & Rem. § 27.005(d).

On appeal, we review de novo whether a party has met or failed to satisfy its burden under the TCPA. *Hall*, 579 S.W.3d at 377.

Harrison concedes, as Texas courts have held, that his legal action is based on the exercise of Appellants' right to petition. *See, e.g.*, *Walgreens v. McKenzie*, 676 S.W.3d 170, 175 (Tex. App.—Houston [14th Dist.] 2023, pet. filed) ("reporting a purported crime to police is a matter of public concern falling within the TCPA"); *Buckingham Senior Living Cmty., Inc. v. Washington*, 605 S.W.3d 800, 807 (Tex. App.—Houston [1st Dist.] 2020, no pet.) ("When a person interacts with the police to report perceived wrongdoing, that person is exercising their right to petition, as that right is defined in the TCPA."); *Murphy USA, Inc. v. Rose*, No. 12-15-00197-CV, 2016 WL 5800263, at *3 (Tex. App.—Tyler Oct. 5, 2016, no pet.) (mem. op.) ("[C]ourts in other states interpreting an anti-SLAPP statute similar to the Texas Statute have held that statements reported to law enforcement regarding incidences of perceived wrongdoing are protected."); *see also Keel Recovery, Inc. v. Tri Cnty. Adjusters, Inc.*, No. 05-19-00686-CV, 2020 WL 5269603, at *4 (Tex. App.—Dallas Sept. 4, 2020, no pet.) (mem. op.) (reporting a crime is a matter of public concern); *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 609 (Tex. App.—San

6

Antonio 2018, pet. denied) (reporting a crime is an exercise of the right to petition under the TCPA). Likewise, Appellants do not attempt to establish an affirmative defense. As such, the only issue on appeal that we must address is whether Harrison has established, by clear and specific evidence, a prima facie case for each essential element of his causes of action for malicious prosecution and intentional infliction of emotional distress that he has asserted against Appellants.

A. *Malicious Prosecution*

A plaintiff that asserts a malicious-criminal-prosecution claim must establish: (1) the commencement of a criminal prosecution against the plaintiff; (2) causation—the initiation or procurement of the criminal action by the defendant; (3) the termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for initiating the criminal proceeding; (6) malice by the defendant in filing the charge; and (7) the plaintiff suffered damages. *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997).

Appellants argue, among other things, that Harrison failed to establish, by clear and specific evidence, a prima facie case for "the absence of probable cause [by Appellants] for [initiating] the [criminal] proceedings" against him.[3] "Malicious prosecution actions involve a delicate balance between society's interest in the efficient enforcement of the criminal law and the individual's interest in freedom from unjustifiable and oppressive criminal prosecution." *Id.* For that reason, courts must strictly adhere to the elements of malicious prosecution, which strike a careful balance between the interests of the parties. *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 290–91 (Tex. 1994). More particularly, and with respect to the element of "the absence of probable cause," Texas courts initially presume that the

---

[3]Appellants specifically deny that they were the cause of the criminal action that was initiated against Harrison. For purposes of the following analysis, we assume—but do not decide—that Appellants caused the initiation or procurement of the criminal proceeding against Harrison.

defendant acted reasonably and in good faith when it initiated the criminal proceeding. *Richey*, 952 S.W.2d at 517–18. This presumption disappears only after "a plaintiff produces evidence that the motives, grounds, beliefs, and other evidence upon which the defendant acted did not constitute probable cause." *Id.* at 518.

"[P]robable cause" is "the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor [complainant], that the person charged was guilty of the crime for which he was prosecuted." *Id.* at 517 (quoting *Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex. 1983), *cert. denied*, 466 U.S. 938 (1984)). Thus, in order to establish a prima facie case under the TCPA, Harrison was tasked with adducing "clear and specific evidence" that Appellants did not have probable cause in connection with any criminal proceeding that was initiated against him. *See* CIV. PRAC. & REM. § 27.005(c).

In support of the "lack of probable cause" element, Harrison only presented (1) his affidavit that he attached to his response to Appellants TCPA motion and (2) a petition that was filed by FS Trucking against Fusselman in July 2020. On the issue of probable cause, Harrison's affidavit consists of conclusory suspicions and beliefs about Appellants' knowledge of events, none of which are based on his personal knowledge. Such testimony does not rise to the level of "clear and specific evidence," as the standard requires. *In Re Lipsky*, 460 S.W.3d at 592 ("Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA.").

In the pleading upon which Harrison relies, FS Trucking alleges that "Defendant Fusselman" moved the rig and by doing so caused substantial damages to it. Harrison argues that, because he "was not an owner or employee of

8

Fusselman," the allegations in the 2020 pleading demonstrates that "Appellants knew" that Harrison was not the person or entity who moved the rig. Harrison, however, is a self-described "company man" and agent for Fusselman. As such, the allegations in the 2020 pleading merely indicate a suspicion or belief that Harrison, *acting on behalf of Fusselman*, moved and damaged the rig. Like Harrison's affidavit, this pleading does not constitute "clear and specific evidence" that any initiation of criminal proceedings by Appellants was made without probable cause. *See* CIV. PRAC. & REM. § 27.005(c). Furthermore, Sotelo was not a party to the 2020 lawsuit, and the allegations in the 2020 pleading therefore provide no evidence of his "knowledge" at the time the criminal prosecution was initiated against Harrison.

Thus, we conclude that Harrison failed to provide the trial court with clear and specific evidence of the absence of probable cause by Appellants to initiate the criminal proceedings against him. Therefore, we need not address the arguments made by the parties as to elements (2) and (3). *See id.*; *Montelongo*, 622 S.W.3d at 301.

B. *Intentional Infliction of Emotional Distress*

A claim for intentional infliction of emotional distress requires proof of four elements: "(1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe." *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017); *City of Houston v. Fletcher*, 166 S.W.3d 479, 491–92 (Tex. App.—Eastland 2005, pet. denied). Appellants maintain that Harrison failed to present clear and specific evidence, and thus did not establish a prima facie case, that they engaged in extreme and outrageous conduct (the second element). We agree.

As a cause of action, intentional infliction of emotional distress can certainly lead to fictitious claims, difficult-to-measure damages, and uncertain proscriptions.

*See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). Nevertheless, there are limited circumstances in which no other cause of action is available, and in which a person's conduct is so egregious that a remedy is required. *Id.* In order to control the risk that this cause of action might be misapplied, Texas courts have set a high standard for establishing "extreme and outrageous" conduct. *Hersh*, 526 S.W.3d at 468. Specifically, to successfully assert a cause of action for intentional infliction of emotional distress, a plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kroger*, 216 S.W.3d at 796 (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (AM. L. INST. 1965))); *see also Hersh*, 526 S.W.3d at 468; *Fletcher*, 166 S.W.3d at 492.

Harrison maintains that Appellants engaged in extreme and outrageous conduct when they leveled criminal charges against him "without investigating [Harrison's] actual involvement." Harrison adds that such conduct is "outrageous" because Appellants also sued "Fusselman" for the same conduct.

Efficient enforcement of the criminal law "requires that private persons who aid in the enforcement of the law should be given an effective protection against the prejudice that is likely to arise from the termination of the prosecution in favor of the accused." *Browning-Ferris Indus.*, 881 S.W.2d at 290–91 (quoting RESTATEMENT (SECOND) OF TORTS ch. 29, intro. note, at 405 (AM. L. INST. 1977)). Accordingly, as a matter of policy, Texas courts encourage the reporting of criminal conduct. *Lang v. City of Nacogdoches*, 942 S.W.2d 752, 760 (Tex. App.—Tyler 1997, writ denied). Additionally, Texas citizens have a "clear legal right to report criminal misconduct to authorities," even if the report misidentifies the perpetrator.

*Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 507 (Tex. 2002); *Walgreens*, 676 S.W.3d at 178.

As a result of our state's policy that favors cooperation between private citizens and law enforcement, we conclude that the mere act of reporting criminal activity to law enforcement does not constitute "extreme and outrageous" behavior. *See Walgreens*, 676 S.W.3d at 178–79; *Atchison v. Mem'l Hermann Mem'l City Hosp.*, No. 14-17-00307-CV, 2018 WL 5260971, at *4 (Tex. App.—Houston [14th Dist.] Oct. 23, 2018, pet. denied) (mem. op.) ("The reporting of activity to the police does not constitute extreme and outrageous behavior."); *Espinosa v. Aaron's Rents, Inc.*, 484 S.W.3d 533, 546 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("Reporting activity to police does not constitute extreme and outrageous behavior."); *see also Bradford v. Vento*, 48 S.W.3d 749, 759 (Tex. 2001) (the act of providing information to the police, even if more information could have been given, "does not amount to extreme and outrageous conduct"); *Lang*, 942 S.W.2d at 759–60 (holding that while a family member's act of having his own brother arrested while vising their mother may be "extreme" conduct, it should not be characterized as "outrageous," because it would "stultify the reporting of possible crimes").

In this case, representatives of FS Trucking reported to law enforcement Harrison's stated intention to move its rig and later reported that the rig had, in fact, been moved. They also provided information to law enforcement about the damage to the rig that may have resulted from Harrison's conduct—the commission of criminal mischief. Such exchanges are routine communications between private citizens and law enforcement concerning events that may constitute criminal behavior. In light of the facts that led to their reports, as well as the protections that are afforded to our citizens when communicating with law enforcement about

11

criminal activity, we cannot say that Appellants' actions are either extreme *or* outrageous, and they certainly do not qualify as both.

Accordingly, we sustain Appellants' first and second issues.

C. *Attorney's Fees*

In their third issue, Appellants argue that the trial court erred by failing to award them reasonable attorney's fees and costs in connection with their TCPA motion. We agree. Here, the trial court implicitly denied Appellants request for attorney's fees and costs when it failed to rule on their motion; when a TCPA motion is or should be granted, the prevailing movant is entitled to an award of reasonable attorney's fees and costs. *See* CIV. PRAC. & REM. § 27.009(a)(1) ("[I]f the [trial] court orders [the] dismissal of a legal action under this chapter, the [trial] court . . . *shall* award to the moving party court costs and reasonable attorney's fees.") (emphasis added).

Because we have concluded that the trial court erred when it failed to grant Appellants' TCPA motion and dismiss the causes of action that Harrison has asserted against them, we also sustain Appellants' third issue and conclude that Appellants were entitled to court costs and reasonable attorney's fees. *Id.* Accordingly, this issue is remanded to the trial court for a determination of the amount of court costs and reasonable attorney's fees that should be awarded to Appellants. *See* CIV. PRAC. & REM. § 27.009(a)(1); *see also Choctaw Constr. Servs. LLC v. Rail-Life R.R. Servs., LLC*, 617 S.W.3d 143, 154 n.4 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

III. *This Court's Ruling*

We reverse the trial court's denial of Appellants' TCPA motion to dismiss, and we remand this cause to the trial court for (1) the rendition of judgment in favor

of Appellants and (2) a determination of the amount of reasonable attorney's fees and costs to be awarded to Appellants.  *See* TEX. R. APP. P. 43.3(a).


W. STACY TROTTER

JUSTICE


August 8, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

13